RANDY RENICK (CA Bar No. 179652)
(Email: rrr@hadsellstormer.com)
CORNELIA DAI (CA Bar No. 207435)
(Email: cdai@hadsellstormer.com)
**HADSELL STORMER RENICK & DAI LLP**
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103-3645
Telephone: (626) 585-9600
Fax: (626) 577-7079

Jay Smith (CA Bar No. 166105)
(Email: js@gslaw.org)
JOSHUA F. YOUNG (CA Bar No. 232995)
(Email: jyoung@gslaw.org)
**GILBERT & SACKMAN, A LAW CORPORATION**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Fax: (323) 937-9139

Attorneys for Plaintiffs
JASON CRAIG and Michael ROSS

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON CRAIG and MICHAEL ROSS, individually and on behalf of all similarly situated current and former employees, <br><br> Plaintiffs, <br><br> v. <br><br> CORTEVA, INC., E.I. DU PONT DE NEMOURS & COMPANY, DOW AGROSCIENCES LLC, THE DOW CHEMICAL CO., DOWDUPONT, INC. n/k/a DUPONT DE NEMOURS, INC., DOW INC., and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 3:19-cv-07923-JCS <br><br> <u>CLASS ACTION</u> <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS** <br><br> DATE:  January 28, 2022 <br> TIME:  9:30 a.m. <br> Ctrm:  F-15th Floor (via Zoom) <br> Judge:  Hon. Joseph C. Spero <br>        Chief Magistrate Judge <br><br> Complaint Filed: December 3, 2019 |

# TABLE OF CONTENTS

Page (s)

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND SUMMARY.............................................................................2

III.   THE SETTLEMENT AGREEMENT ..................................................................4

IV.    ARGUMENT .........................................................................................................4

     A.     Plaintiffs' Fee Request for 25% of the Fund, $950,000, is Reasonable
          Under Both the Percentage of the Fund and Lodestar Method.............................4

        1.     Using the Percentage of Fund Method, Class Counsel's
             Fee Request is Reasonable...........................................................................6

             a)     Class Counsel Achieved an Excellent Result. ................................7

             b)     Class Counsel Litigated the Case on a Contingency
                  Basis and Faced Considerable Risk. .................................................8

             c)     The Skill and Quality of the Work Performed
                  by Class Counsel Merits Approval of the
                  Requested Fee Award. ....................................................................9

             d)     The Amount Requested to Compensate Class Counsel is
                  Reasonable in Comparison to Awards in Similar Cases...............10

        2.     Based on Fees Calculated under the Lodestar Method,
             Class Counsel's Fee Request is Also Reasonable......................................11

             a)     Class Counsel's Hourly Rates are Reasonable. ............................11

             b)     Plaintiffs' Lodestar Amount for Hours Expended
                  is Reasonable. ...............................................................................12

             c)     An Upward Multiplier of 2.1 Is Modest and Justified
                  in this Case.....................................................................................13

     B.     The Costs that Class Counsel Seek for Reimbursement Are Reasonable. ............14

V.     CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................. 6

*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*,
   226 Cal. App. 4th 26 (2014) ........................................................................... 11

*Augustus v. ABM Security Services, Inc.*,
   2 Cal. 5th 257 (2016) .................................................................................. 8, 9

*Barbosa v. Cargill Meat Solutions Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ....................................................................... 7

*Bell v. Home Depot U.S.A., Inc.*,
   No. 2:12-cv-02499 ........................................................................................ 8

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ........................................................................ 5, 7

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ...................................................................................... 5

*Bravo v. Gale Triangle, Inc.*,
   2017 U.S. Dist. LEXIS 77714 (C.D. Cal. Feb. 16, 2017) ....................................... 10

*In re Businessland Sec. Litig.*,
   1991 U.S. Dist. LEXIS 8962 (N.D. Cal. June 14, 1991) ......................................... 14

*Bussey v. Affleck*,
   225 Cal. App. 3d 1162 (1990) ......................................................................... 14

*Camacho v. Bridgeport Fin., Inc.*,
   523 F.3d 973 (9th Cir. 2008) .......................................................................... 11

*Chavez v. Netflix, Inc.*,
   162 Cal. App. 4th 43 (2008) ....................................................................... 6, 10

*In re Consumer Privacy Cases*,
   175 Cal. App. 4th 545 (2009) ................................................................. *passim*

*Craft v. City of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................................. 14

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2014) ..................................................................... 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Cases**

*In re Equity Funding Corp. Sec. Litigation*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ................................................................. 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................. 11, 13

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ................................................................. 14

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ................................................................. 13

*In re Heritage Bond Litig.*,
    2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ...................... 9, 10

*Heritage Pac. Fin., LLC v. Monroy*,
    215 Cal. App. 4th 972 (2013) ................................................................. 11

*In re Immune Response Sec. Litig.*,
    497 F.Supp.2d 1166 (S.D. Cal. 2007) ................................................. 15

*Laffitte v. Robert Half Internat., Inc.*,
    1 Cal. 5th 480 (2016) ................................................................. 5, 6, 11

*Laffitte v. Robert Half Internat. Inc.*,
    231 Cal. App. 4th 860 (2014) ................................................................. 6, 10

*Lealao v. Beneficial Cal., Inc.*,
    82 Cal. App. 4th 19 (2000) ................................................................. 11, 13

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ................................................................. 7

*Lusby v. Gamestop Inc.*,
    2015 U.S. Dist. LEXIS 42637 (N.D. Cal. Mar. 31, 2015) .......................... 7

*Mangold v. Cal. Pub. Utils. Comm'n*,
    67 F.3d 1470 (9th Cir. 1995) ................................................................. 4

*Martin v. AmeriPride Servs.*,
    2011 U.S. Dist. LEXIS 61796 (S.D. Cal. June 9, 2011) .......................... 10

*Moore v. Jas H. Matthews & Co.*,
    682 F.2d 830 (9th Cir. 1982) ................................................................. 12

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Cases**

*Navarro v. Servisair*,
 2010 U.S. Dist. LEXIS 41081 (N.D. Cal. Apr. 26, 2010) ............................................... 10

*Norris v. Mazzola*,
 2017 U.S. Dist. LEXIS 208610 (N.D. Cal. Dec. 19, 2017) ............................................. 14

*In re Omnivision Techs.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................................ 5

*Ontiveros v. Zamora*,
 303 F.R.D. 356 (E.D. Cal. 2014) .................................................................................... 14

*Ozga v. U.S. Remodelers, Inc.*,
 2010 U.S. Dist. LEXIS 91196 (N.D. Cal. Aug. 9, 2010)................................................. 11

*In re Pac. Enter. Sec. Litig.*,
 47 F.3d 373 (9th Cir. 1995) ............................................................................................. 8

*Reed v. 1-800 Contacts, Inc.*,
 2014 U.S. Dist. LEXIS 255 (S.D. Cal. Jan. 2, 2014)................................................. 13, 14

*Schiller v. David's Bridal, Inc.*,
 2012 U.S. Dist. LEXIS 80776 (E.D. Cal. June 11, 2012)............................................. 4, 6

*Serrano v. Unruh*,
 32 Cal.3d 621 (1982) ..................................................................................................... 13

*Sproul v. Astrue*,
 2013 U.S. Dist. LEXIS 12667 (S.D. Cal. Jan. 30, 2013)................................................. 9

*Swedish Hosp. Corp. v. Shalala*,
 1 F.3d 1261 (D.C. Cir. 1993) ........................................................................................... 6

*In re Vitamin Cases*,
 110 Cal. App. 4th 1041 (2003) ....................................................................................... 13

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002) ................................................................................*passim*

*Vo v. Las Virgenes Mun. Water Dist.*,
 79 Cal. App. 4th 440 (2000) ........................................................................................... 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
 19 F.3d 1291 (9th Cir. 1994) ........................................................................................... 5

v

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Cases**

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224 (2001) ........................................................................................ 7

**Statutes**

Cal. Bus. & Prof. Code §17200 et seq. ............................................................................ 2

Cal. Lab. Code § 226.7 ....................................................................................................... 2

Cal. Lab. Code § 512 .......................................................................................................... 2

Cal. Lab. Code § 2698 et seq. ........................................................................................... 2

**Rules**

Fed. Rule of Civ. Pro. 23(h) ............................................................................................. 4

Fed. Rule of Civ. Pro. 26(f) .............................................................................................. 2

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 28, 2022, at 9:30 a.m., in Courtroom F, 15th Floor, of the above-entitled court located at 450 Golden Gate Avenue, San Francisco, California 94102 (hearing to be held via Zoom before the Honorable Chief Magistrate Judge Joseph C. Spero: Zoom instructions are provided by the Court at: https://www.cand.uscourts.gov/judges/spero-joseph-c-jcs/), Plaintiffs Jason Craig and Michael Ross, individually and on behalf of all similarly situated current and former employees (collectively "Plaintiffs"), will move and hereby do move for an award of attorneys' fees in the amount of $950,000 (25% of the common fund) and costs in the amount of $21,664.81.

The motion will be based on the Federal Rules of Civil Procedure, the foregoing notice, points and authorities, and declarations and exhibits filed concurrently herewith, and the pleadings, records, and files in this action.

DATED:  November 15, 2021                    HADSELL STORMER RENICK & DAI LLP


                                             By: s/ Randy Renick

                                             Attorneys for Plaintiffs

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Jason Craig and Michael Ross ("Plaintiffs"), on behalf of themselves and the class which has been certified for purposes of settlement, submit this motion seeking an award of attorneys' fees in the amount of $950,000 (25% of the settlement fund) and the reimbursement of costs in the amount of $21,664.81 from a proposed $3,800,000 class action settlement ("Settlement") reached in this action with Defendants Dow Agrosciences, LLC and The Dow Chemical Company ("Defendants"). The fees and costs are sought in connection with the class action settlement of wage and hour claims brought on behalf of

> All current and former hourly employees of Defendants who worked a 12-hour rotating shift at the chemical manufacturing plant in Pittsburg, California at any time from December 3, 2015 through August 4, 2021.

Attached as Exhibit 1 to the Declaration of Randy Renick ("Renick Decl.") filed concurrently herewith is a true and correct copy of the Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement"), as amended by Exhibit 2, the Amendment to Joint Stipulation of Class Action Settlement and Release, which was preliminarily approved by this Court on August 4, 2021. Dkt. #65. The Settlement provides that Plaintiffs may seek reasonable fees and costs. Renick Decl., ¶13; Ex. 1 thereto, ¶¶ 31-32.

Based on all of the relevant circumstances, the fees requested at the Ninth Circuits' 25% of the fund benchmark is reasonable under the percentage of the fund with lodestar cross-check method. The high caliber skill and expertise of Class Counsel, and efficient litigation of the action, resulted in a settlement that confers a substantial benefit to the Class. Indeed, the 223 Class Members will receive an average payment of $12,421. In addition, there was considerable risk that litigation of the action, taken by Class Counsel on a contingency basis, would continue for many more years if the matter had not settled. Courts of this district and circuit have awarded fees in the amount of 25% of the fund in similar cases with these same factors present. They have also found these factors warrant a positive multiplier for purposes of a lodestar cross-check, including ones much larger than the 2.1 multiplier sought here.

Accordingly, Plaintiffs respectfully request that the Court award attorneys' fees in the amount of $950,000 (25% of the common fund) and costs in the amount of $21,664.81.

## II.     BACKGROUND SUMMARY[1]

On December 3, 2019, Plaintiffs filed this action in the Northern District of the United States District Court of California. Dkt. 1. The complaint asserted, among other things, that Defendants require Plaintiffs and the putative class members, as operators at its Pittsburg chemical manufacturing plant, to monitor the chemical production process, respond to upsets and critical events, maintain the safe and stable operation of their units, and remain attentive and reachable at all times during their shifts. Thus, Plaintiffs never receive duty-free 10-minute rest breaks or 30-minute meal breaks because they are constantly and continuously responsible for their units and were never relieved of these duties. Dkt. 1 at 4.

The Complaint alleged the following legal claims: (1) Failure to Authorize and Permit Rest Periods (Lab. Code § 226.7; Wage Order 1-2001); (2) Failure to Provide Meal Periods (Lab. Code §§ 226.7, 512; Wage Order 1-2001); (3) Private Attorneys General Act ("PAGA")(Lab. Code § 2698 et seq.); and (4) Violation of the Unfair Competition Law ("UCL")(Bus. & Profs. Code §17200 et seq. Plaintiffs sought unpaid wages, statutory and civil penalties, restitution, attorneys' fees and costs, interest, and injunctive and declaratory relief for the time period from December 3, 2015 to the present. See Dkt. 1.

Both prior and subsequent to the filing of the action on December 3, 2019, Plaintiffs conducted a diligent and extensive investigation of Defendants' wage and hour policies and practices at the Pittsburgh chemical manufacturing plant, particularly as to the provision of meal and rest breaks, so as to evaluate liability and damages. Renick Decl., ¶¶ 17-21.

On February 28, 2020, the parties filed their Joint Rule 26(f) Report and Case Management Conference Statement, identifying, among other things, their disagreement over whether discovery should be phased and the categories of discovery that should be produced. Dkt. 31 at 6. On March 6, 2020, the Court ordered no bifurcation of discovery and the production by Defendants on an anonymized basis, of payroll records, timecards, policies, and procedures. Dkt. 40. On May 12, 2020,

---

[1] This motion includes only a summary of the relevant background as Plaintiffs will be filing a separate motion for final approval to be heard on the same date as the instant motion wherein the case history and facts will be more fully set out.

June 22, 2020, and July 13, 2020, Defendants produced payroll records, timecards, policies, and procedures, pursuant to the Court's order. Renick Decl. ¶ 18.

On July 17, 2020, and July 27, 2020, Plaintiffs served their opening round of discovery upon Defendants, which included Special Interrogatories and Requests for Production of Documents. Through this discovery, Plaintiffs primarily sought contact information for the putative Class during the relevant Class Period, as well as their job titles and employee numbers, and documents relevant to the Plaintiffs' claims for rest break and meal break violations, and defenses thereto, and the Named Plaintiffs' adequacy as class representatives. Renick Decl. ¶ 19.

In May 2020, the parties agreed to attend a mediation with Steve Pearl, a well-respected mediator located in Los Angeles with expertise in wage and hour law, on August 17, 2020. Meanwhile, Defendants produced, and Plaintiffs reviewed, over a thousand pages of documents in PDF and Excel, including Defendants' payroll data and time records for the class members, shift schedules, policies and related training materials, related correspondence, and personnel files of the Named Plaintiffs. Renick Decl. ¶ 20.

With sufficient investigation, the engagement of experts, research, written discovery, class member interviews on relevant topics such as job assignments, work duties and responsibilities, and policies and practices, particularly regarding meal and rest breaks, and document analysis to allow Plaintiffs to evaluate Defendants' liability and damage exposure for the Class Period, the parties moved forward with mediation with Steve Pearl on August 17, 2020.  After a full day of negotiations, the parties were able to reach an agreement. Renick Decl. ¶¶ 20-21.

Plaintiffs' Motion for Preliminary Approval came on for hearing on April 23, 2021. At the hearing, the Court identified a number of issues which needed to be addressed before Preliminary Approval would be granted. Renick Decl. ¶ 22.  Plaintiffs and Defendants (the "Parties") subsequently negotiated an Amendment to the Joint Stipulation of Class Action Settlement and Release ("Joint Stipulation" or "Settlement Agreement"), a Revised Class Notice, a Revised Proposed Order Granting Preliminary Approval and a Revised Order Granting Final Approval.  Those documents were filed with the Court on May 21, 2021. Dkt. 64. On August 4, 2021, this Court issued its Order Granting Preliminary Approval of the Settlement. Dkt. 65. The parties subsequently stipulated to issue a

corrected Notice to the Class and the Court granted the Order approving the corrected Notice and its

issuance on October 18, 2021. Dkt. 70.  The Order extended the deadline for Class Members to file

objections and to opt out to December 20, 2021, Dkt. 70, and the Preliminary Approval Order required

Plaintiffs' Motion for Attorneys' Fees to be posted on the Administrator's website and filed 35 days

prior to the objections/opt-out deadline, by November 15, 2021, Dkt. 65.

## III.    THE SETTLEMENT AGREEMENT

The Parties have agreed that the action may be settled and compromised for the Gross

Settlement Amount ("GSA") of $3,800,000, which includes, subject to and contingent upon the

approval of this Court, (a) Plaintiffs' request for reasonable attorneys' fees of up to 25% of the

settlement fund (i.e., $950,000); (b) litigation expenses (estimated to be less than $30,000); (c) class

representative service award payments to Plaintiffs Jason Craig and Michael Ross, each in the sum of

$5,000; (d) administration fees and expenses to CAC Services Group, LLC, in the amount of up to

$10,000; and (e) the payment to the California Labor and Workplace Development Agency of $30,000

(75% of $40,000) allocated for the payment of applicable civil penalties under PAGA.  Renick Decl.,

Exhibit 1 (hereinafter "Settlement Agreement" or "SA") ¶¶ 18, 32, 39, 48, 50.  Defendants will pay, in

addition to the GSA, the employers' share of withholdings and taxes. SA ¶ 23.  The Settlement is non-

reversionary. SA ¶ 24. Uncashed settlement funds, if any, will be  sent to the California State

Controller's Office Unclaimed Property Fund and held for the benefit of the Class Member to whom the

payment was designated in accordance with state law. See Exhibit 2, Amended Settlement Agreement,

amending SA ¶ 79.

## IV.    ARGUMENT

### A.    Plaintiffs' Fee Request for 25% of the Fund, $3,800,000, Is Reasonable Under Both the Percentage of the Fund and Lodestar Method.

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may

award attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

Fed. R. Civ. P. 23(h). Federal courts apply state law in diversity actions to determine "not only the right

to fees, but also in the method of calculating the fees."  *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d

1470, 1478 (9th Cir. 1995); *accord Schiller v. David's Bridal, Inc*., No. 1:10-cv-00616-AWI-SKO, 2012

1  U.S. Dist. LEXIS 80776, at *42-43 (E.D. Cal. June 11, 2012).

2        The common fund doctrine provides that "'when a number of persons are entitled in common to

3  a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the

4  creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorney's fees out of

5  the fund.'" *Laffitte v. Robert Half Internat., Inc.*, 1 Cal. 5th 480, 497 (2016); *see also Boeing Co. v. Van*

6  *Gemert*, 444 U.S. 472, 478 (1980)("[A] litigant or a lawyer who recovers a common fund for the benefit

7  of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a

8  whole."). Under California law, the choice of a fee calculation method for a fee award from a class

9  action common fund "is generally one within the discretion of the trial court, the goal under either the

10  percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their

11  efforts." *Laffitte, supra*, 1 Cal. 5th at 504.  Similarly, under Ninth Circuit law, "[w]here a settlement

12  produces a common fund for the benefit of the entire class, courts have discretion to employ either the

13  lodestar method or the percentage-of-recovery method" to award attorney's fees. *In re Bluetooth*

14  *Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *In re Mercury Interactive Corp.*,

15  618 F.3d 988, 992 (9th Cir. 2010)); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

16  "As always, when determining attorneys' fees, the district court should be guided by the fundamental

17  principle that fee awards out of common funds be 'reasonable under the circumstances.'" *In re Wash.*

18  *Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994).

19        In the last few decades, both federal and state courts have regularly approved a percentage fee

20  calculation in determining a fee award where the class action settlement establishes a common fund for

21  the benefit of the class out of which the attorney's fee is awarded.  *Laffitte*, 1 Cal. 5th at 493-94 (citing

22  federal and state cases).  In *Laffitte*, the California Supreme Court approved the percentage of the fund

23  calculation under California law, holding that "trial courts have discretion to conduct a lodestar cross-

24  check on a percentage fee . . . [or] to forgo a lodestar cross-check and use other means to evaluate the

25  reasonableness of the requested percentage fee." *Id.* at 506.

26        Courts have recognized a number of reasons and advantages in adopting the percentage of fund

27  method for the fee calculation.  *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).

28  A primary reason is that "a percentage-of-the-fund approach more accurately reflects the economics of

litigation practice," which is "result-oriented." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993).  In a common fund case, as here, "the monetary amount of the victory is often the true measure of success, and therefore it is most efficient that it influence the fee award." *Id*.  In addition, courts have found use of the percentage of the fund method to be the "better practice" because it "will encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions." *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).

The Court, therefore, should apply a percentage of fund and lodestar cross-check approach.  Its application will confirm that the requested fee award of 25% of the settlement fund, $950,000, is reasonable.

### 1.    Using the Percentage of Fund Method, Class Counsel's Fee Request Is Reasonable.

In approving the percentage of the fund method, the California Supreme Court in *Laffitte* instructed only that courts "may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created." 1 Cal. 5th at 503 (emphasis added).  Looking to the range of fee awards, one-third of the total potential recovery is regularly awarded in California as a "reasonable" fee in common fund cases. *Laffitte v. Robert Half Internat. Inc.*, 231 Cal. App. 4th 860, 878 (2014) (concluding that award of one-third the common fund was "consistent with, and in the range of, awards in other class action lawsuits"); *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 n.13 (2009) ("'Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.'"); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (2008)(same). Plaintiffs here request a fee award of 25% of the settlement fund, which is well below the average one-third of the recovery regularly awarded in such cases.

"As there is no definitive set of factors that California courts mandate or endorse for determining the reasonableness of attorneys' fees in the context of a common-fund percentage-of-the-benefit approach, [federal courts] consider the reasonableness of the percentage requested in light of the factors endorsed by the Ninth Circuit, with the 25 percent award as a starting point." *Schiller*, 2012 U.S. Dist. LEXIS 80776, at *47 (applying percentage of the fund method in wage and hour class case); *see, e.g.*,

*In re Consumer Privacy Cases*, 175 Cal. App. 4th at 557 n.13 (citing *Six Mexican Workers v. Arizona Citrus Growers*, 904 F. 2d 1301, 1311 (9th Cir. 1990)).  Courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The Ninth Circuit has identified a number of factors that courts may consider when determining whether an award is reasonable and whether a departure from the benchmark is appropriate, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases. *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013)(citing *Vizcaino*, 290 F.3d at 1047).

As addressed herein, the fee award requested by Class Counsel at the Ninth Circuit's 25% benchmark falls within what has been deemed reasonable ranges under both California and Ninth Circuit law and is supported by the *Vizcaino* factors.

a)       **Class Counsel Achieved an Excellent Result.**

Class Counsel achieved an excellent result in this case (the first *Vizcaino* factor). "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Lusby v. Gamestop Inc.*, 2015 U.S. Dist. LEXIS 42637, at *9 (N.D. Cal. Mar. 31, 2015).  "Compromise is inherent and necessary in the settlement process . . . . [E]ven if the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated, this is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation." *Wershba v. Apple Computer, Inc*., 91 Cal. App. 4th 224, 250 (2001)(internal quotations omitted).  A settlement, therefore, need not obtain 100% of the damages and may, in fact, provide only a fraction of the recovery sought to be found fair and reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Wershba*, 91 Cal. App. 4th at 250.

Here, the net settlement to be distributed to the Class after the reduction of the LWDA payment

for PAGA penalties, attorney's fees, costs, incentive awards, and administration is $2,770,000.[2]  Renick Decl., ¶ 11.  The average payment to each of the 223 Class Members will receive an average payment of $12,421 with a median of $13,044. Class members who worked the highest number of Qualifying Shifts during the almost six year class period will receive as much as $19,599. *Id.*  Class Counsel estimates the gross settlement is approximately 32% of the total damages, penalties, interest and attorney's fees that Plaintiffs could have recovered on the rest break and derivative claims. *Id.*, ¶ 12. Thus, the financial benefit conferred upon the class is significant, and the settlement is an excellent result for the Class. *See* Renick Decl., ¶¶ 11-12.

> **b)**     **Class Counsel Litigated the Case on a Contingency Basis and Faced Considerable Risk.**

The risk of further litigation and contingent nature of the fee and the financial burden, the second and fifth *Vizcaino* factors, favor approval of the requested fee award. *See In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding fees justified because of the complexity of the issues and the risks).

Plaintiffs faced a considerable risk of further litigation here.  Plaintiffs filed the case after the California Supreme Court's decision in *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016). While Plaintiffs believe that the decision provided clear guidance regarding employers' rest break obligations under California law and confirmed Defendants' failure to provide its operators with lawful rest breaks, district courts have not consistently interpreted or applied the decision in all circumstances. *See, e.g., Bell v. Home Depot U.S.A., Inc.*, No. 2:12-cv-02499 JAM-CKD, 2017 U.S. Dist. LEXIS 55442, at *5 (E.D. Cal. Apr. 11, 2017)(concluding *Augustus* not applicable because the court did not consider an on-premises rest break policy which does not require employees to remain on call).  In addition, Plaintiffs believe that the facts here direct that an off-duty meal period should have been provided to operators since the employer could schedule the work in a manner that allowed operators to be relieved by other operators qualified and certified to cover their positions so they could take their meal breaks. While Defendants presented an on-duty meal break agreement to employees, Plaintiffs

---

[2] This calculation assumes that Plaintiffs seek the full amount of estimated costs of $30,000.  As Plaintiff's request for costs is only $21,664.81, the amount available to the Class increases by $8,335.19, resulting in a slight increase to the amount to be distributed to each Class Member.  Plaintiffs will provide an exact calculation in connection with the Motion for Final Approval.  Renick Decl. ¶ 11.

believe the agreement is not valid to qualify for the "exceedingly narrow" on-duty exception because the facts do not satisfy the requirement that "the nature of the work prevents an employee from being relieved of all duty." *See Augustus*, 2 Cal. 5th at 266–67. Nonetheless, Defendants would certainly argue that recent legislation and requests for exemptions granted by the California Labor Commissioner's Office for other companies in the same or similar industries involving safety-sensitive positions indicate that this requirement would be met. Renick Decl., ¶ 31.

Indeed, with class claims for violation of rest break and other wage and hour laws, litigation can extend for many years due to the many hurdles facing plaintiffs in class actions. *See., e.g*., Renick Decl., ¶¶ 28-29 (class actions involving overtime, living wage, and/or meal and rest break violations litigated five years, six years, and more than 10 years before resolving). Accordingly, many more years of litigation and an appeal was a very real possibility here.

Second, the fact that Class Counsel litigated this case on a contingency fee basis and has foregone payment since the outset of the litigation supports the percentage sought in the instant motion. Renick Decl., ¶ 27. "Courts are loathe to penalize experienced counsel for efficient representation under contingency agreements." *Sproul v. Astrue*, 2013 U.S. Dist. LEXIS 12667, at *6 (S.D. Cal. Jan. 30, 2013). "Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award." *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *68 (C.D. Cal. June 10, 2005). Thus, Class Counsel's vigorous but efficient litigation of this case on a contingency fee basis with no certainty of recovery of its fees and costs supports an award of 25% of the common fund in attorneys' fees.

       **c)**      **The Skill and Quality of the Work Performed by Class Counsel Merits Approval of the Requested Fee Award.**

The experience, ability, and quality of Class Counsel's work, the third and fourth *Vizcaino* factors, support the requested fee award. Class Counsel in this case has extensive experience successfully litigating wage-and-hour class actions, as well as other types of employment actions. Renick Decl., ¶¶ 4-9, 30; Ex. 3 thereto; Declaration of Joshua F. Young ("Young Decl."), ¶¶ 3-6. These attorneys, at the firms Hadsell Stormer Renick & Dai and Gilbert & Sackman, have been recognized for their skill and expertise in the field of employment and class action litigation. *Id*. The skill of these

attorneys, the reputation of the firms, and the attorneys' contributions to public interest communities throughout California, have been consistently recognized across the legal community. *Id.* Moreover, Hadsell Stormer Renick & Dai and Gilbert & Sackman have extensive experience litigating on behalf of oil refinery and chemical production operators. Renick Decl., ¶ 30; Young Decl., ¶ 6.

This Court can note that defense counsel in this case is also highly skilled. *Cf. In re Equity Funding Corp. Sec. Litigation*, 438 F. Supp. 1303, 1336-37 (C.D. Cal. 1977) ("[P]laintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly."). The defendants in this case are represented by attorneys from a well-regarded law firm representing a sophisticated client with formidable resources.

### d)    The Amount Requested to Compensate Class Counsel is Reasonable in Comparison to Awards in Similar Cases.

The final *Vizcaino* factor – comparable awards in similar cases – supports Class Counsel's request for 25% of the common fund. Federal courts "have consistently approved of attorney fee awards over the 25% benchmark[,]" specifically at a rate of "30% or higher[.]" *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *18 n.12 (C.D. Cal. June 10, 2005). This range is consistent with California law. *See Laffitte*, 231 Cal. App. 4th at 878 (one-third of the fund); *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 557 n.13 (one third of the recovery); *Chavez*, 162 Cal. App. 4th at 66 (same). In fact, fifty percent has generally been accepted as the "upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small." *Martin v. AmeriPride Servs.*, 2011 U.S. Dist. LEXIS 61796, at*22-23 (S.D. Cal. June 9, 2011).

Under the very circumstances here, where Class Counsel achieves a positive result quickly and prior to extensive motion practice or class certification, courts in this district and others of this Circuit have consistently found the 25% of the fund benchmark to be an appropriate fee award. *See, e.g., Navarro v. Servisair*, No. C 08-02716 MHP, 2010 U.S. Dist. LEXIS 41081, at *10 (N.D. Cal. Apr. 26, 2010)(finding "a 25% fee consistent with the Ninth Circuit benchmark" appropriate where class action settlement reached "relatively quickly without litigating any motions for summary judgment or class certification"); *Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017 U.S. Dist. LEXIS 77714, at *47-48 (C.D. Cal. Feb. 16, 2017)(finding award of the standard 25% fee benchmark

10

appropriate where settlement "was a favorable result" "but not exceptional" and "reached after two mediations and before the case had reached class certification or otherwise participated in motion practice"); *Ozga v. U.S. Remodelers, Inc.*, No. C 09-05112 JSW, 2010 U.S. Dist. LEXIS 91196, at *7-8 (N.D. Cal. Aug. 9, 2010)(concluding a deviation upward from 25% benchmark to 29% appropriate where Plaintiff's counsel obtained an excellent result, received an overwhelmingly positive reaction to the settlement, and faced a significant risk in prosecuting the case given the uncertain state of California law in similar wage and hour cases but "reached this settlement quickly and did not engage in any motion practice"); *see also* Young Decl., ¶ 8 (collection of state and federal cases approving fee requests for 25% of the common fund).

### 2. Based on Fees Calculated under the Lodestar Method, Class Counsel's Fee Request is Also Reasonable.

Under both California and Ninth Circuit law, a lodestar cross-check on a percentage fee is acceptable. *Laffitte*, 1 Cal. 5th at. at 506; *Vizcaino*, 290 F.3d at 1043. In addition, the court "may increase or decrease [the lodestar] amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (identifying same factors).

#### a) Class Counsel's Hourly Rates are Reasonable.

In order to calculate the lodestar, a court must determine the reasonable hourly rate for the services rendered by class counsel. *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 (2009). A reasonable rate is typically based upon the prevailing market rate in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 1009 (2013). Generally, the "market rate" is based on the rates in the community where the court is located. *Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th 26, 71 (2014); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

As set forth in the supporting declarations of counsel, the hourly rates applied here are consistent with the attorneys' and paralegals' skill and experience and reflect the prevailing market rates. Renick

Decl., ¶¶ 32-44; Young Decl., ¶¶ 8-9.  The requested rates are also consistent with and comparable to rates approved by courts in this district. Renick Decl., ¶¶ 35-44; Young Decl., ¶ 8.

b)      <strong>Plaintiffs' Lodestar Amount for Hours Expended Is Reasonable.</strong>

Below are charts reflecting the hours worked on this case by the two firms representing the class, Hadsell Stormer Renick & Dai and Gilbert & Sackman:

HADSELL STORMER RENICK & DAI:

| Attorney or Paralegal | Current Hours | Hourly Rate | Current Lodestar |
|---|---|---|---|
| Randy Renick (Partner) | 299.80 | $900.00 | $269,820.00 |
| Cornelia Dai (Partner) | 106.60 | $800.00 | $85,280.00 |
| Elizabeth Song (Associate) | 12.20 | $475.00 | $5,795.00 |
| Michael O'Connor | 7.20 | $425.00 | $3,060.00 |
| Maria Stroud (Paralegal) | 38.20 | $300.00 | $11,460.00 |
| **TOTAL:** | 464.00 | | $375,415.00 |

GILBERT & SACKMAN:

| Attorney or Paralegal | Current Hours | Hourly Rate | Current Lodestar |
|---|---|---|---|
| Joshua F. Young (Shareholder) | 94.10 | $750 | $70,575 |
| **TOTAL:** | 94.10 | $750 | $70,575 |

Renick Decl., ¶ 23; Young Decl., ¶ 7, Exhibit 1 thereto.  This includes an additional 35 hours. Plaintiffs' counsel expects to spend meeting with class members, preparing the motion for final approval, finalizing the motion for attorney's fees and costs, resolving claims, and working with the claims administrator to ensure that the settlement amount is properly allocated to class members; and distributed to each class member. Renick Decl., ¶ 23.  The combined lodestar for the two firms is $445,990.  This lodestar requires a multiplier of 2.1 to be equivalent to the fee amount sought here. Renick Decl., ¶ 23.

Generally, hours are reasonable if "at the time rendered, [they] would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Moore v. Jas H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). Class Counsel are "entitled to compensation for all hours 'reasonably spent unless special circumstances would render an award unjust.'" *Vo v. Las Virgenes Mun. Water Dist.*, 79 Cal. App. 4th 440, 446 (2000)) citing *Serrano v. Unruh*, 32 Cal.3d 621, 639 (1982)). Such special circumstances do not exist in this case.

Hours reasonably worked should include time spent drafting and revising pleadings, meeting

12

with clients and opposing counsel, and preparing the case for class certification and mediation. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Serrano*, *supra*, 20 Cal. 3d at 49. Taking into account the common fund factors analysis above, the time submitted by Class Counsel was reasonably necessary to achieve success in the litigation: a Joint Settlement Agreement conferring substantial benefits to the Settlement Class Members. *Consumer Privacy Cases*, *supra*, 175 Cal. App. 4th at 556-57 ("a lodestar calculation may be enhanced on the basis of a percentage-of-the-benefit analysis"); *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1052 (2003).

As detailed in the declarations accompanying this motion, Class Counsel have spent a total of 558.10 hours litigating this case. Renick Decl., ¶ 23 (464 hours); Young Decl., ¶ 7 (94.1 hours). The declarations of Class Counsel demonstrate that the hours spent in litigating this case are reasonable in light of the important benefits conferred upon the settlement class, the amount and nature of discovery conducted, mediation preparation, and continuing investigation and negotiation of the settlement well after the parties agreed upon the general terms of the settlement. *See generally* Renick Decl., ¶¶ 9-11, 14-22; Young Decl., ¶ 7, Exhibit 1 thereto. Given the wealth of experience of the partners at the two firms on the case, all the attorneys and paralegals who have assisted with any aspect of the litigation have been efficient, avoiding duplication and unnecessary work; however, to the extent work could have been inefficient or duplicative, Class Counsel exercised billing judgment and excluded unnecessary hours from their calculation of the lodestar. Renick Decl., ¶¶ 24-26; Young Decl., ¶ 10.

### c)    An Upward Multiplier of 2.1 Is Modest and Justified in this Case.

Based on the total lodestar of $445,990, the lodestar cross-check requires a 2.1 multiplier to be equivalent to the fee amount sought here.  An upward multiplier is supported by the factors California and federal courts consider for this determination. *See Lealao*, 82 Cal. App. 4th at 26; *see Hanlon*, 150 F.3d at 1029.  Here, Class Counsel achieved a very successful result with a very large recovery for individual class members, an average payment to each of the 223 Class Members is $12,421.

Indeed, with the presence of these same factors, the court in *Reed v. 1-800 Contacts, Inc.*, No. 12-cv-02359 JM (BGS), 2014 U.S. Dist. LEXIS 255, at *26-28 (S.D. Cal. Jan. 2, 2014), approved a 25 percent of $11.7 million settlement fee award which was supported by a lodestar cross-check with a higher 2.9 multiplier. The court found that approval of the 2.9 multiplier was supported by the frequent

approval by the Ninth Circuit of even higher multipliers. *Id.* at *28 (*citing Vizcaino*, 290 F.3d at 1051 n.6). In *Vizcaino*, *supra*, 290 F.3d at 1052-54, the Ninth Circuit listed 34 common fund cases that were decided between 1996 and 2001 in which the fees were awarded as a percentage of the common fund. In 24 of these cases, a lodestar-times-multiplier analysis was also used. *Id.* The multipliers in these 24 cases were as high as 19.6, and the average multiplier was 3.32. *Id. See also Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (applying 2.83 multiplier); *Craft v. City of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (court ordered attorneys' fee of 25% of the settlement fund, where lodestar cross-check showed a multiplier of 5.2).

For these reasons, the Court should approve Plaintiffs' request for a fee award of $950,000 — 25 percent of the $3,800,000 settlement fund—supported here by a lodestar cross-check with a 2.1 multiplier.

### B.      The Costs that Class Counsel Seek for Reimbursement Are Reasonable.

Class Counsel also seeks reimbursement of $21,664.81 in total costs incurred in prosecuting this case to date. At preliminary approval, estimated costs were up to $30,000. Renick Decl., ¶ 11. Plaintiffs' costs are set forth in the declarations of Class Counsel. *See* Renick Decl., ¶¶ 45-46 ($18,316.58), Exhibit 4 thereto; Young Decl., ¶ 11 ($3,348.23), Exhibit 1 thereto.

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014).  As one commentator noted, "the prevailing view is that expenses are awarded in addition to the fee percentage." Conte, Attorney Fee Awards, § 2.08 at pp. 50-51 (2d Ed. 1977).  Indeed, courts routinely reimburse class counsel for the costs incurred in prosecuting cases on a contingent fee basis. *See In re Businessland Sec. Litig.*, No. C-90-20476-RFP, 1991 U.S. Dist. LEXIS 8962, at *6 (N.D. Cal. June 14, 1991), and cases cited therein. The recovery of costs is to include all out of pocket costs not part of overhead which are typically billed to a client. *Bussey v. Affleck*, 225 Cal. App. 3d 1162 (1990); *Norris v. Mazzola*, No. 15-cv-04962-JSC, 2017 U.S. Dist. LEXIS 208610, at *40 (N.D. Cal. Dec. 19, 2017); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (reasonable out of pocket costs of the type ordinarily billed to paying clients are recoverable).

All of the categories of costs sought here are typically billed to a client. Renick Decl., ¶ 46.  The

costs sought by Class Counsel are reasonable and were necessarily incurred in order to advance the litigation for the benefit the class. Renick Decl., ¶ 45; Young Decl., ¶ 11. They, therefore, should be reimbursed. *See In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166, 1178 (S.D. Cal. 2007).

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for attorneys' fees in the amount of $950,000 (25% of the settlement fund), and reimbursement of costs in the amount of $21,664.81.


DATED:  November 15, 2021                    **HADSELL STORMER RENICK & DAI LLP**


By: s/ Randy Renick

Attorneys for Plaintiffs