RANDY RENICK (CA Bar No. 179652)
(Email: rrr@hadsellstormer.com)
CORNELIA DAI (CA Bar No. 207435)
(Email: cdai@hadsellstormer.com)
**HADSELL STORMER RENICK & DAI LLP**
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103-3645
Telephone: (626) 585-9600
Fax: (626) 577-7079

Attorneys for Plaintiffs
JASON CRAIG and Michael ROSS

[*Additional Counsel on next page*]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON CRAIG and MICHAEL ROSS, individually and on behalf of all similarly situated current and former employees,<br><br>        Plaintiffs,<br><br>    v.<br><br>CORTEVA, INC., E.I. DU PONT DE NEMOURS & COMPANY, DOW AGROSCIENCES LLC, THE DOW CHEMICAL CO., DOWDUPONT, INC. n/k/a DUPONT DE NEMOURS, INC., DOW INC., and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 3:19-cv-07923-JCS<br><br>**<u>CLASS ACTION</u>**<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS IN SUPPORT THEREOF**<br><br>DATE: January 28, 2022<br>TIME: 9:30 a.m.<br>Ctrm: F-15th Floor<br>Judge: Hon. Joseph C. Spero<br>          Chief Magistrate Judge<br><br>Complaint Filed: December 3, 2019 |

JAY SMITH (CA Bar No. 166105)
(Email: js@gslaw.org)
JOSHUA F. YOUNG (CA Bar No. 232995)
(Email: jyoung@gslaw.org)
**GILBERT & SACKMAN, A LAW CORPORATION**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Fax: (323) 937-9139

Attorneys for Plaintiffs
JASON CRAIG and Michael ROSS

# <u>TABLE OF CONTENTS</u>

<u>PAGE(S)</u>

I.      INTRODUCTION ..................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................2

      A.      Factual Background ................................................................ 2

      B.      Procedural Background............................................................ 4

      C.      Investigation and Discovery ....................................................4

      D.      Mediation ............................................................................5

      E.      Settlement Agreement and Preliminary Approval .................................5

III.    ARGUMENT ......................................................................................6

      A.      The Court-Approved Notice Plan Was Fully Implemented and Satisfies
            Rule 23 Requirements.............................................................6

      B.      The Settlement is Fair, Adequate, and Reasonable and Should be Granted
            Final Approval. ....................................................................9

            1.      The Strength of Plaintiffs' Case and the Risk, Expense,
                  Complexity, and Likely Duration of Further Litigation ......................... 10

            2.      The Amount Offered in Settlement............................................11

            3.      The Extent of Discovery and Stage of the Proceedings............................13

            4.      Experience and Views of Counsel ............................................ 14

             5.      The Presence of Governmental Entities.......................................... 14

             6.      The Reaction of the Class Members .......................................... 15

      C.      The Plan of Allocation is Fair, Adequate, and Reasonable
            and Should be Approved..........................................................15

      D.      The Requested Service Payment for the Two Named Plaintiffs
            Should Be Approved...............................................................18

      E.      Final Certification of the Class for Settlement Purposes is Proper.........................21

            1.      The Settlement Class Satisfies the Rule 23(a) Requirements....................21

i

**TABLE OF CONTENTS**
**(Continued)**

**PAGE(S)**

2.      The Settlement Class Meets the Requirements of Rule 23(b) ................... 22

IV.    CONCLUSION ................................................................................................................. 23

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMO OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 3:19-cv-07923-JCS

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Augustus v. ABM Security Services, Inc.*,
2 Cal. 5th 257 (2016) ........................................................................10, 11, 12, 23

*Bell v. Home Depot U.S.A., Inc.*,
No. 2:12-cv-02499 .........................................................................................10

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. Mar. 19, 2015) ...........................................16, 20

*Berlanga v. Equilon Enterprises LLC*,
U.S.D.C., Northern District, Case No. 4:17-cv-00282 (January 22, 2019) .........................13

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ..............................................................15, 16

*Boyd v. Bank of Am. Corp.*,
No. SACV 13–561 DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)........................20

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ..........................................................14

*Bradley v. Networkers Int'l, LLC*,
211 Cal. App. 4th 1129 (2012) ...............................................................23

*Brinker Restaurant Corp. v. Superior Court*,
53 Cal.4th 1004 (2012) ............................................................................23

*Buzas v. Phillips 66 Company*,
Case No. 4:17-cv-00163-YGR (March 6, 2018) .......................................20

*Buzas v. Phillips 66 Company*,
U.S.D.C., Northern District, Case No. 4:17-cv-00163 (March 8, 2018) ...........................13

*Chu v. Wells Fargo Invs., LLC*,
2011 U.S. Dist. LEXIS 15821 (N.D. Cal. Feb. 16, 2011) ......................20

*In re Citric Acid Antitrust Litig.*,
145 F. Supp. 2d 1152 (N.D. Cal. 2001) ..................................................15

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)......................................................................10

i

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMO OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 3:19-cv-07923-JCS

*Clack v. Chevron Corporation*,
   Los Angeles Superior Court, Case No. BC649514 (August 6, 2020) .................................13

*In re Conn. Gen. Life Ins. Co.*,
   1997 WL 910387 (C.D. Cal. Feb.13, 1997)...........................................................................20

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ..............................................................................................20

*Covillo v. Specialty's Café*,
   2014 U.S. Dist. LEXIS 29837 (N.D. Cal. Mar. 6, 2014)......................................................20

*Craft v. City of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................................................................16

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2014)..........................................................................................16

*Edwards v. The First Am. Corp.*,
   798 F.3d 1172 (9th Cir. 2015) ..............................................................................................23

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ................................................................................................21

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) .....................................9

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ......................................................................20

*Glass v. UBS Financial Services, Inc.*,
   2007 WL 221862 (N.D. Cal. Jan. 26, 2007) .........................................................................20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..............................................................................................23

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ................................................................................................22

*Harris v. Vector Mktg. Corp.*,
   2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) .............................................16, 19

*In re High-Tech Emple. Antitrust Litig.*,
   2015 U.S. Dist. LEXIS 118051 (N.D. Cal. Sep. 2, 2015) .................................................9, 17

*In re Hyundai & Kia Fuel Econ. Litig.*,
   2018 U.S. App. LEXIS 1626 (9th Cir. Jan. 23, 2018) ..........................................................21

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMO OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 3:19-cv-07923-JCS

**TABLE OF AUTHORITIES**
**(Continued)**

PAGE(S)

CASES

*La Fleur v. Med. Mgmt. Int'l, Inc.*,
  2014 WL 2967475 (C.D. Cal. June 25, 2014) ...............................................................20

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ...........................................................................................7

*Linney v. Cellular Alaska Partnership*,
  151 F.3d 1234 (9th Cir. 1998) .............................................................................11, 12, 13

*Marshall v. Holiday Magic, Inc.*,
  550 F.2d 1173 (9th Cir. 1977) ..........................................................................................7

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .............................................................................9, 10, 12, 22

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*,
  618 F.3d 988 (9th Cir. 2010) ...........................................................................................9

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...............................................................................11, 14

*Officers for Justice v. Civil Svc. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) .....................................................................................9, 12

*In re Oracle Sec. Litig.*,
  No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 18, 1994) .............17

*Resnick v. Frank*,
  779 F.3d 934 (9th Cir. 2015) .........................................................................................19

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .....................................................................................7, 19

*Sandoval v. Roadlink United States Pac., Inc.*,
  No. EDCV 10-00973 .........................................................................................................22

*Satchell v. Fed. Express Corp.*,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ...................................................................9

*Slaven v. BP America, Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000) ....................................................................................21

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .........................................................................................21

iii

# TABLE OF AUTHORITIES
## (Continued)

PAGE(S)

**CASES**

*Stewart v. San Luis Ambulance, Inc.*,
    878 F.3d 883 (9th Cir. 2017) .......................................................................................10

*Thomas v. Magnachip Semiconductor Inc.*,
    2016 WL 1394278 (N.D. Cal. Apr. 7, 2016) ..................................................................8

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ........................................................................................8, 9

*Viceral v. Mistras Group, Inc.*
    2017 WL 661352 (N.D. Cal. Feb. 17, 2017) ............................................................12, 17

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003), aff'd 396 F.3d 96 (2d Cir. 2005)........................11

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .....................................................................................16

*Willner v. Manpower Inc.*
    2015 U.S. Dist. LEXIS 80697 (N.D. Cal. June 20, 2015) .................................................19

**STATUTES**

Cal. Lab. Code § 512 ..........................................................................................................4

Cal. Lab. Code § 226.7 ...................................................................................................4, 12

Cal. Lab. Code § 226.75 ...................................................................................................10

Cal. Labor Code § 887 ......................................................................................................10

Cal. Lab. Code § 2698 *et seq.* ...........................................................................................4

Cal. Labor Code § 2699(l)(2) ............................................................................................14

Cal. Bus. & Prof. Code § 17200 *et seq.* ...........................................................................4

Private Attorneys General Act ..................................................................................... *passim*

28 U.S.C. § 1715 ...............................................................................................................15

**OTHER AUTHORITIES**

Fed R. Civ. P. 23 ...................................................................................................... *passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
**(Continued)**

**PAGE(S)**

**WAGE ORDER**

Wage Order 4, subdivision 12(A) ..................................................................................................23

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMO OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 3:19-cv-07923-JCS

PLEASE TAKE NOTICE that on January 28, 2022, at 9:30 a.m. or as soon thereafter as the matter may be heard, in Courtroom F, 15th Floor, of the above-entitled court located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Jason Craig and Michael Ross, individually and on behalf of all members of the conditionally certified class (collectively "Plaintiffs"), will move and hereby do move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the order concurrently filed herewith granting final approval of the class action settlement and the plan of allocation and entry of judgment.

The motion will be based on the Federal Rules of Civil Procedure, the foregoing notice, memorandum of points and authorities, and declarations and exhibits filed concurrently herewith, and the pleadings, records, and files in this action.

DATED:  January 14, 2022                    Respectfully submitted,

                                            HADSELL STORMER RENICK & DAI LLP

                                            GILBERT & SACKMAN, A LAW CORPORATION


                                             */s/ Randy Renick*
                                            Randy Renick
                                            Attorneys for Plaintiffs and Conditionally Certified Class

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3          Jason Craig and Michael Ross ("Named Plaintiffs") seek final approval of the proposed class

4    action settlement ("Settlement") with Defendants Dow Agrosciences, LLC, and The Dow Chemical

5    Company ("Defendants" or "Corteva") of wage and hour claims brought on behalf of all current and

6    former hourly employees of Defendants who worked a 12-hour rotating shift at the chemical

7    manufacturing plant in Pittsburg, California.

8          On August 4, the Court granted Preliminary Approval of the March 16, 2021 Settlement

9    Agreement (Dkt. # 58-2), amended May 19, 2021 Dkt. #[64-1] ("Settlement Agreement" or

10   "Settlement" at Ex. 1 to the Declaration of Randy Renick, Ex. 1). The Settlement provides that

11   Defendants will pay $3,800,000 for the benefit of the Class, which is defined as:

12               All current and former hourly employees who worked a 12-hour rotating shift at the
                 chemical manufacturing plant in Pittsburg, California from December 3, 2015 through
13               [the date of Preliminary Approval].

14   *Id.* at 2.

15         The Settlement provides for cash payment to 223 Class Members according to the number of

16   weeks worked during the Class Period while assigned a 12-hour rotating shift at the Pittsburg, California

17   manufacturing plant ("Workweeks"), Settlement Agreement at ¶ 23, Declaration of Nancy Johnson

18   ("Johnson Decl.), ¶ 6.a.-6.d.; service awards not to exceed $5,000 for each of the two Named Plaintiffs

19   (Settlement at ¶ 26); $40,000 in penalties under the Private Attorneys General Act ("PAGA"), with 75%

20   of the PAGA penalties ($30,000) being paid to the California Labor and Workforce Development

21   Agency ("LWDA") and 25% of the PAGA penalties ($10,000) being paid to the Class Members (*id.* at ¶

22   38); $10,000 for claims administration to CAC Services Group, LLC  ("CAC" or "Claims

23   Administrator"); and reasonable attorneys' fees and costs, *id.* at 20, which Plaintiffs seek in the amount

24   of $950,000 (25% of the fund). *See* Renick Decl., ¶ 3,  Johnson Decl., ¶ 17.[1]

25         The Court should grant final approval of the Settlement as it is fair, reasonable, and adequate.

26   The Settlement provides for payment of $3,800,000 on an all-cash, non-reversionary basis, and is the

27

28   ───────────────────
     [1] The Claims Administration was completed under budget at $8,166.78, and Plaintiffs request only
     $21,664.81 of the $30,000 in costs contemplated in the Settlement Agreement.

1

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMO OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 3:19-cv-07923-JCS

result of arms-length negotiations following an extensive investigation of liability and damages conducted by Plaintiffs. The net settlement to be distributed to the Class after the reduction of the LWDA payment for PAGA penalties, attorneys' fees, costs, incentive awards, and administration costs is $2,780,168.41. Declaration of Nancy Johnson ("Johnson Decl.") ¶ 16. The average payment to each of the 223 Class Members is $12,511.96. *Id.* Thus, the financial benefit conferred upon the Class is significant, and the recovery here is fair, reasonable, and adequate in light of the substantial benefit conferred on the class members and the risk, expenses, and uncertainty of continued litigation.

In addition, the reaction of the Class Members has been very positive and favors approval of the Settlement.  No Class Member has objected or opted out. Johnson Decl. ¶¶ 11-12. The Claims Administrator properly implemented the Notice Plan, and only one (1) Notice remains undeliverable. *Id.* ¶¶ 5-9. Efforts to locate that Class Member will continue for at least another 180 days after the checks are issued. Renick Decl., Ex. 1, at ¶ 79.   There were no disputes by any Class Member regarding the number of Workweeks awarded. Renick Decl. ¶ 44; Johnson Decl. ¶¶ 13-14.

The Court should also approve the plan of allocation, whereby the court-approved attorneys' fees and costs, court-approved service awards, administration costs, and payment to the California Labor & Workforce Development Agency ("LWDA") under the Private Attorneys General Act ("PAGA") are deducted from the Settlement, and a formula based on Workweeks is used for distribution to the Class Members of the resulting net settlement amount.

In addition, the requested incentive awards in the amount of $5,000 each for the two Named Plaintiffs is consistent with a fair, just, and adequate settlement.

Final approval of certification for purposes of settlement under Fed. R. Civ. P. 23 is also proper.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

The proposed Class consists of all employees of Defendants who worked a 12-hour rotating shift at the chemical manufacturing plant in Pittsburg, California, at any time during the period from December 3, 2015 through August 4, 2021. Settlement Agreement, ¶ II.5, Ex. 1 to the Renick Decl.

Defendants the Dow Chemical Company and Dow AgroSciences, LLC own and/or operate the Pittsburg plant, located in Contra Costa County, California, which manufactures products for agricultural

2

operations and pest control services. The plant operates continuously, 24-hours per day, seven days per week. The plant processes hazardous and flammable chemicals that must be constantly monitored in order to ensure safety of those on-site and in the nearby communities. The chemicals must be maintained in a stable state to prevent toxic spills and fires, which requires, among other things, constant monitoring and adjusting of temperatures and pressures, prevention of reactive chemical issues, and monitoring and prevention of chemical leaks. Renick Decl. ¶ 4.

Certain employees, principally operators, who are scheduled to work 12-hour shifts ("12-hour shift employees"), are required to operate and/or monitor the production process at all times. 12-hour shift employees are required to monitor their units, respond to upsets and critical events, and maintain the safe and stable operation of the units. There are eight units, seven of which operate by sending and receiving materials to other units, processing materials, and shipping out product. The remaining unit provides security and emergency services. Approximately four to eight operators work a given day or night 12-hour shift depending on the size of the unit. An operator must be qualified and certified for his or her position in a unit. Renick Decl. ¶ 5.

Because the chemical production process requires non-stop monitoring, Plaintiffs and the other operators work continuous 12-hour shifts on a rotating shift schedule. Their duties include: monitoring the chemical production process, responding to upsets and critical events, maintaining safe and stable operation of their units, being attentive, being reachable during work hours, responding to audible alarms/pages on the intercom system/communications on handheld radios, and being in contact with their supervisors and other employees in their unit during work hours. Renick Decl. ¶ 6.

Plaintiffs contend that they and the other operators are not relieved of their duties during the entirety of their 12-hour shifts. They are constantly and continuously responsible for their units, which includes monitoring the work in their unit, responding to all work-related calls, pages, radio communications and alarms, receiving and taking on continuous work demands, assisting maintenance workers and contractors with projects, and being in communication with supervisors and other employees. As a result, Plaintiffs and the other operators do not receive off-duty 10-minute rest breaks or 30-minute off-duty meal breaks during their shifts. Renick Decl. ¶ 7.

Plaintiffs further contend that throughout the class period, Plaintiffs and the other operators

have neither been scheduled for 10-minute rest breaks nor provided designated relief in order to take such breaks. Similarly, they have neither been scheduled for 30-minute meal breaks nor provided designated relief in order to take such breaks. Defendants do not have a policy, practice, or system for providing relief to Plaintiffs and the other class members to allow them to take off-duty rest or meal breaks. Renick Decl. ¶ 8. Defendants contend that they had valid rest and meal break policies throughout the class period.

## B.    Procedural Background

On December 3, 2019, Plaintiffs filed this action in the Northern District of the United States District Court of California. Dkt. 1. The complaint asserted, among other things, that Defendants require Plaintiffs and the putative class members, as operators at its Pittsburg chemical manufacturing plant, to monitor the chemical production process, respond to upsets and critical events, maintain the safe and stable operation of their units, and remain attentive and reachable at all times during their shifts. Thus, Plaintiffs never receive duty-free 10-minute rest breaks or 30-minute meal breaks because they are constantly and continuously responsible for their units and were never relieved of these duties. Dkt. 1 at 4.

The Complaint alleged the following claims: (1) Failure to Authorize and Permit Rest Periods (Lab. Code § 226.7; Wage Order 1-2001); (2) Failure to Provide Meal Periods (Lab. Code §§ 226.7, 512; Wage Order 1-2001); (3) Private Attorneys General Act ("PAGA")(Lab. Code § 2698 *et seq*.); and (4) Violation of the Unfair Competition Law ("UCL")(Bus. & Profs. Code §17200 *et seq*.).  Plaintiffs sought unpaid wages, statutory and civil penalties, restitution, attorneys' fees and costs, interest, and injunctive and declaratory relief for the time period from December 3, 2015 to the present. See Dkt. 1.

On March 2, 2020, the Court granted the parties' stipulation to dismiss without prejudice defendants Corteva, Inc., E.I. Du Pont de Nemours & Company, DowDuPont, Inc. n/k/a Dupont de Nemours, Inc., and Dow Inc, leaving The Dow Chemical Company and Dow Agrosciences, LLC remaining as defendants. See Dkt. 32. That same day, Defendants the Dow Chemical Company and Dow Agrosciences filed their Answer to the Complaint. Dkt. 33.

## C.    Investigation and Discovery

On February 28, 2020, the parties filed their Joint Rule 26(f) Report and Case Management

4

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 3:19-cv-07923-JCS

Conference Statement, identifying, among other things, their disagreement over whether discovery should be phased and the categories of discovery that should be produced. Dkt. 31 at 6. On March 6, 2020, the Court ordered no bifurcation of discovery and the production by Defendants on an anonymized basis, of payroll records, timecards, policies, and procedures. Dkt. 40. On May 12, 2020, June 22, 2020, and July 13, 2020, Defendants produced payroll records, timecards, policies, and procedures, pursuant to the Court's order. Renick Decl. ¶ 12.

On July 17, 2020, and July 27, 2020, Plaintiffs served their opening round of discovery upon Defendants, the Dow Chemical Company and Dow AgroSciences LLC, which included Special Interrogatories and Requests for Production of Documents. Through this discovery, Plaintiffs sought contact information for the putative class members, job titles and employee numbers, and documents relevant to the Plaintiffs' claims for rest break and meal break violations, and defenses thereto, and the Named Plaintiffs' adequacy as class representatives. Renick Decl. ¶ 13.

### D.    Mediation

In May 2020, the parties agreed to attend a mediation with Steve Pearl, a well-respected mediator located in Los Angeles with expertise in wage and hour law, on August 17, 2020. Meanwhile, Defendants produced, and Plaintiffs reviewed, over a thousand pages of documents in PDF and Excel, including Defendants' payroll data and time records for the class members, shift schedules, policies and related training materials, related correspondence, and personnel files of the Named Plaintiffs. Renick Decl. ¶ 14.

With sufficient investigation, research, written discovery, class member interviews on relevant topics such as job assignments, work duties, and responsibilities, policies, and practices, particularly regarding meal and rest breaks, and document analysis to allow Plaintiffs to evaluate Defendants' liability and damage exposure for the Class Period, the parties moved forward with mediation with Steve Pearl on August 17, 2020. After a full day of negotiations, the parties were able to reach an agreement. Renick Decl. ¶ 15.

### E.    Settlement Agreement and Preliminary Approval

The Court held a hearing on Plaintiffs' Motion for Preliminary Approval on April 23, 2021. At the hearing, the Court identified a number of issues which needed to be addressed before Preliminary

5

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 3:19-cv-07923-JCS

Approval would be granted. The Parties subsequently negotiated an Amendment to the Joint Stipulation

of Class Action Settlement and Release ("Joint Stipulation" or "Settlement Agreement"), a Revised

Class Notice, a Revised Proposed Order Granting Preliminary Approval, and a Revised Order Granting

Final Approval. Those items were submitted to the Court on May 21, 2021, Dkt. 64, 64-1, 64-2, and on

August 4, 2021, the Court granted Preliminary Approval of the Settlement Agreement. Renick Decl. ¶

16.

On October 15, 2021, Plaintiffs filed a request to extend class notice and final approval dates so

that a corrected notice could be provided to Class Members[2]. Dkt. 65-1. On October 18, 2021, the

extension was granted, and the objection and request for exclusion deadlines was continued to

December 20, 2021, and the hearing on Final Approval was continued to January 28, 2022. Dkt. 70.

Renick Decl. ¶ 17.

On November 15, 2021, thirty-five days before the December 20, 2021 Objection deadline -

Plaintiffs filed and posted on the case settlement website their Motion for Attorneys' Fees and

Reimbursement of Costs. Dkt. 71; Johnson Decl. ¶ 6.f.

## III.    ARGUMENT

### A.    The Court-Approved Notice Plan Was Fully Implemented and Satisfies Rule 23 Requirements.

Rule 23 requires for class action settlements that a court direct notice in a "reasonable manner to

all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(2).  Rule 23 further

requires that the notice be "the best notice that is practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort," and that the notice

---

[2] After the Notice was initially mailed on October 4, 2021, Plaintiffs discovered that the Notice did not contain the revisions ordered by the Court in its August 4, 2021 Preliminary Approval Order.  Those revisions were: 1) breaking out the PAGA portion and class action allocations for each class member; 2) advising Class members that they could not opt-out of the PAGA portion of the Settlement; 3) describing the procedure for filing an objection and appearing at the Final Approval hearing; 4) that the Motion for Attorney's Fees would be available on the administrator's website 35 days prior to the opt-out and objection deadline; and 5) appearance at the Final Fairness hearing would be online rather than in-person.  On October 15, 2021, Plaintiffs filed a request to extend class notice and final approval dates so that a corrected notice could be provided to Class Members. Dkt. 65-1. On October 18, 2021, the extension was granted, and the objection and request for exclusion deadlines were continued to December 20, 2021, and the hearing on Final Approval was continued to January 28, 2022. Dkt. 70.  As set forth in the Declaration of Nancy Johnson, the revised Notice was then sent to each of the 223 Class Members.

state the nature of the action, the class definition, the class claims, issues, or defenses, the right to individual legal representation, the right to request exclusion, and the binding effect of a judgment under Rule 23(c)(3).  Fed R. Civ. P. 23(c)(2).  The notice "must present a fair recital of the subject matter and proposed terms and give[] an opportunity to be heard to all class members." *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977).

On August 4, 2021, the Court entered an order preliminarily approving, *inter alia*, "the proposed notice procedure and form." Order, Dkt. 65 at 6; Revised Notice, Dkt. 69-2, Ex. A; Dkt. 70 (Order re: mailing of Revised Notice). In granting preliminary approval, the Court found that the proposed Notice meets all of the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).

Pursuant to and in compliance with the Preliminary Approval Order, the Claims Administrator mailed the Class Notice to 223 Class Members on October 4, 2021. Johnson Decl. ¶¶ 6.a.-6.d. The Notice included detailed information regarding the following: the nature of the case; the definition of the class; the terms of the Settlement; a class member's rights with respect to participation in the Settlement and the consequences of exercising those rights; the total settlement amount, including the portions of the total settlement amount allocated to PAGA penalties, for payment of service awards, attorneys' fees and costs, and administrative costs; how to object to the Settlement; how to opt out of the Settlement; how to challenge the information upon which their payment will be calculated; the procedures and timing for doing each of these acts; and the date set for the final approval hearing.  *See* Ex. 1 to Johnson Decl.  The Notice also included the contact information for class counsel; the address for a website, maintained by the claims administrator with links to the notice, motions for approval and for attorneys' fees; and instructions on how to access the case docket via PACER. *Id.* Pursuant to the Court's order of October 18, 2021, Dkt. 70, the Claims Administrator sent an amended Class Notice to the 223 Class Members. Johnson Decl., ¶ 6.d, Ex. 1 thereto.

Each Class Member's Notice was customized to include the estimated payment amount he or she will receive, the formula used to calculate the estimated amount, and the number of Workweeks worked by that Class Member. Johnson Decl. ¶ 6.c.; Ex. 1 thereto. Thus, the information provided in the Notice exceeds that which is required.  *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (proper notice "does not require an estimate of the potential value of [the] claims"); *Rodriguez v. West Publ'g Corp.*,

563 F.3d 948, 962 (9th Cir. 2009) (The notice is sufficient if it "describes the aggregate amount of the settlement fund and the plan for allocation.").

The Claims Administrator fully complied with the Notice Plan approved by the Court, *see* Dkt. 65 at 10-11, 9, Dkt. 70 at 1.  The Administrator determined from the data provided by Defendants on September 1, 2021, that there were 223 Settlement Class Members, and sent Notice to each Class Member on September 13 and on October 20, 2021. Johnson Decl., ¶ 6.a.-6.d.  CAC created the case website, http://www.pittsburgplantsettlement.com, on which it posted the Notice and related court and settlement documents. *Id.* at ¶ 6.d.  Plaintiffs filed their Motion for Attorneys' Fees and Reimbursement of Costs on November 15, 2021, and the motion was posted on the case website on November 20, 2021. *Id.* at ¶6.f.

Of the 223 Notices mailed, five (5) were returned by the U.S. Postal Service without forwarding addresses.  For three of the returns, the Claims Administrator was able to locate new addresses, and the returned notice was re-mailed to the new address. Johnson Decl. ¶ 9. One (1) remains undeliverable. *Id.* A check will be prepared for that share while the Claims Administrator continues its efforts to locate the class member for at least 180 days after checks have been prepared. Renick Decl., Ex. 1, at ¶ 79.  Thus, the Notice Plan provided the "best notice that is practicable under the circumstances" as notice was provided to each Class Member who could be identified based on Defendants' records and only five (5) notices required re-mailing.

Further, the 60-day deadline to object or opt out approved by the Court satisfied the notice requirements of Rule 23 and does not infringe on due process rights. *See Thomas v. Magnachip Semiconductor Inc.*, No. 14-CV-01160-JST, 2016 WL 1394278, at *8 (N.D. Cal. Apr. 7, 2016)(finding "any period shorter than 60 days is too short a time to allow class members to properly respond"); *see also Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993)(finding mailing of notice 31 days before the deadline for objections is adequate).

On November 15, 2021, 35 days prior to the objection/opt-out deadline of December 20, 2021, the Claims Administrator posted to the case website Plaintiffs' Notice and Motion for Attorneys' Fees and Reimbursement of Costs and supporting papers. Johnson Decl. ¶ 6.d.  The posting of the motion was consistent with the Settlement Agreement and the Court's order,  and it satisfies the standard for notice

8

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 3:19-cv-07923-JCS

set by the Ninth Circuit in *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010), which requires that a motion for attorneys' fees be made available to class members prior to the deadline for objections.

**B.    The Settlement is Fair, Adequate, and Reasonable and Should be Granted Final Approval.**

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Svc. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). In evaluating a proposed class action settlement, "[t]he universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Justice*, 688 F.2d at 625 (citations omitted); *accord Torrisi*, 8 F.3d at 1375. "A district court may consider some or all of the following factors when making this determination: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *In re High-Tech Emple. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118051, at *8 (N.D. Cal. Sep. 2, 2015)(*citing Officers for Justice*, 688 F.2d at 625).

The court is entitled to exercise its "sound discretion" when deciding whether to grant final approval. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. "In addition, the settlement may not be the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). Settlement negotiations in this case were conducted over many months after extensive investigation and discovery, at arm's length, and with the assistance of a mediator. Renick Decl., ¶15. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. 03-cv-2878-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). Thus, the proposed class settlement is the result of serious, informed, non-collusive, and good-faith negotiations.

The recovery here is fair, reasonable, and adequate in light of the substantial benefit conferred on

the class members and the risk, expenses, and uncertainty of continued litigation.

> ### 1.   The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

In evaluating the fairness, reasonableness, and adequacy of the Settlement, the Court should weigh the strength of Plaintiffs' case against the risk and expense of continued litigation.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  In determining whether a proposed settlement is reasonable and adequate, "the [trial] judge does not try out or attempt to decide the merits of the controversy," and an appellate court "need not and should not reach any dispositive conclusions on the admittedly unsettled legal issue." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 454 (2d Cir. 1974). Here, while Plaintiffs believe their case against Defendants is strong, the Settlement eliminates significant risks they would face if the action were to proceed against Defendants.

Plaintiffs believe that the California Supreme Court's clarification of the off-duty nature of rest breaks in *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016), provided clear guidance regarding an employer's rest break obligations under California law and confirmed Defendants' failure to provide Operators with lawful rest breaks. Yet, district courts have since diverged in their interpretation and application of the decision. *See, e.g., Bell v. Home Depot U.S.A., Inc.*, No. 2:12-cv-02499 JAM-CKD, 2017 U.S. Dist. LEXIS 55442, at *5 (E.D. Cal. Apr. 10, 2017) (concluding *Augustus* not applicable because the court did not consider an on-premises rest break policy which does not require employees to remain on call); *Stewart v. San Luis Ambulance, Inc.*, 878 F.3d 883, 886–87 (9th Cir. 2017)(concluding Augustus did not control question of whether ambulance employers are required to relieve ambulance attendants working 24-hour shifts of all duties during rest periods and certifying question to California Supreme Court). In addition, the California legislature has since been active in enacting exceptions. See Cal. Lab. Code § 226.75 (eff. Sept. 20, 2018)(employees holding safety-sensitive positions at petroleum refineries exempt from rest break laws to the extent they are required to carry radios, respond to emergencies, and remain on the employer's premises during their shifts); Cal. Labor Code § 887 (eff. Dec. 19, 2018)("[E]mergency ambulance employees shall remain reachable by a portable communications device throughout the entirety of each work shift."). Renick Decl. ¶ 18.

In addition, Plaintiffs believe that the facts here direct that an off-duty meal period should have

been provided to operators since the employer could schedule the work in a manner that allowed operators to be relieved by other operators qualified and certified to cover their positions so they could take their meal breaks. While Defendants presented an on-duty meal break agreement to employees, Plaintiffs believe the agreement is not valid to qualify for the "exceedingly narrow" on-duty exception because the facts do not satisfy the requirement that "the nature of the work prevents an employee from being relieved of all duty." *See Augustus*, 2 Cal. 5th at 266–67. Nonetheless, Defendants would certainly argue that recent legislation and requests for exemptions granted by the California Labor Commissioner's Office for other companies in the same or similar industries involving safety-sensitive positions indicate that this requirement would be met. Renick Decl. ¶ 19.

With class claims for violations of rest and meal breaks and other wage and hour laws, litigation can extend for many years due to the many hurdles facing plaintiffs in class actions. *See, e.g.*, Renick Decl. ¶¶ 20-21 (class actions involving overtime, living wage, and/or meal and rest break violations litigated five years, six years, and more than 10 years before resolving). Accordingly, many more years of litigation and an appeal was a very real possibility here.  Continued litigation against Defendants would inevitably involve significant additional expenses and protracted legal battles, which are avoided through settlement. Id. ¶ 20.  *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003), aff'd 396 F.3d 96 (2d Cir. 2005) ("The potential for this complex litigation to result in enormous expense, and to continue for a long time, was great."). Thus, on balance, these factors weigh in favor of the Settlement.

### 2.      The Amount Offered in Settlement

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  Approval of a class settlement is justified where "the settlement terms compare favorably to the uncertainties associated with continued litigation regarding the contested issues in th[e] case." *Id.* at 526.  A settlement, therefore, need not obtain 100% of the damages and may, in fact, provide only "a fraction of the potential recovery" sought to be found fair and reasonable.  *Linney*, 151 F.3d at 1242.

Plaintiffs' primary claim is for the non-compliant rest breaks and meal breaks and compensation of one hour's premium pay for each such failed break. Defendants' policies failed to provide relief to operators for duty-free rest breaks and meal breaks as they were required to be attentive and monitoring their units at all times, including during their rest breaks and meal breaks. Renick Decl. ¶ 22. As discussed herein, *see supra* Section III.B.1., Plaintiffs believe that the California Supreme Court's clarification of the off-duty nature of rest breaks in *Augustus v. ABM Security Services, Inc*., 2 Cal. 5th 257 (2016), provided confirmed Defendants' failure to provide operators with lawful rest breaks but district courts have not consistently interpreted or applied the decision in all circumstances and the California Legislature has been active in permitting exceptions. Moreover, there remained a dispute as to whether the on-duty meal break agreement offered by Defendant would qualify for the exception.

Plaintiffs alleged claims for a violation of Labor Code section 226.7, the UCL, and PAGA. The Settlement provides that $40,000 will be allocated to penalties under the PAGA, with 75% of the PAGA penalties ($30,000) being paid to the California Labor and Workforce Development Agency ("LWDA") and 25% of the PAGA penalties ($10,000) being paid to Settlement Class Members who do not opt out. Settlement, ¶ 38. This amount is reasonable and adequate given that the possible recovery on the PAGA claim is within the Court's discretion and varies tremendously from thousands to a few million dollars, and that there is "a substantial risk of recovering nothing" or very little. *See, e.g., Viceral v. Mistras Group, Inc*. No. 15-cv-02198-EMC, 2017 WL 661352, at *3 (N.D. Cal. Feb. 17, 2017). Renick Decl. ¶ 23.

Moreover, a settlement is not judged *solely* against what might have been recovered had Plaintiffs prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable. *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1242 (9th Cir. 1998); *In re Mego Fin. Corp. Sec. Litig.,* 213 F. 3d 454, 459 (9th Cir. 2000). "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not . . . render the settlement inadequate or unfair." *Id.* at 628. Accordingly, the proposed Settlement is not to be judged

12

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 3:19-cv-07923-JCS

against speculative measure of what might have been achieved.  *Linney*, 151 F.3d at 1234.

The settlement here provides for the payment of $3,800,000.  Renick Decl. ¶ 3. There are 223 class members.  The net settlement after the reduction of the LWDA payment for PAGA penalties, attorneys' fees, costs, incentive awards, and administration costs is $2,780,168.41. The average net payment to each class member will be $12,511.96.  Based on Plaintiffs' review of timecard and payroll data of all shifts during the class period, the total recovery amount at the time of the August 17, 2020 mediation was approximately $8,200,000. The settlement amount of $3,800,000 is, therefore, approximately 46% of the total amount that Plaintiffs could have recovered on the rest break, meal break, PAGA and UCL claims.  Renick Decl. ¶ 24. Thus, the financial benefit conferred upon the class is significant.

The Settlement compares favorably with  other cases recently resolved on behalf of 12 hour shift operators at Northern California refineries.  In *Buzas v. Phillips 66 Company*, U.S.D.C., Northern District, Case No. 4:17-cv-00163 (final approval of $5,500,000 settlement granted March 8, 2018), 677 class members received an average distribution of $5,881.20.  In *Berlanga v. Equilon Enterprises LLC,* U.S.D.C., Northern District, Case No. 4:17-cv-00282 (final approval of $7,750,000 settlement granted January 22, 2019), 497 class members received an average distribution of $11,419. In *Clack v. Chevron Corporation*, Los Angeles Superior Court, Case No. BC649514 (final approval of $17,375,000 granted on August 6, 2020), 2026 class members received an average distribution of $6,334.74. In *Kendig v. ExxonMobil Oil Corp.*, U.S.D.C., Central District, Case No. 2:18-cv-9224 (final approval of $4,391,585 settlement granted on August 24, 2020), 338 Class Members received an average distribution of $9,514.04.  Renick Decl., ¶ 24.

### 3.    The Extent of Discovery and Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. During the action's pendency, Class Counsel thoroughly investigated and researched the claims, potential defenses, and the developing body of law relating to the interpretation of the Wage Orders and an employer's duty to authorize and permit rest breaks and to provide meal breaks. As described above, Class Counsel thoroughly engaged in

13

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMO OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 3:19-cv-07923-JCS

the discovery process and made use of documents and data provided by Defendants through formal and informal discovery to assess Defendants' potential liability and the likelihood the Court could grant class certification. Thus, the Parties have enough information to make an informed appraisal of the case in reaching a Settlement, which strongly benefits the Class and favors approval. Renick Decl. ¶ 25.

### 4. Experience and Views of Counsel

It is Class Counsel's recommendation and belief that the proposed settlement is in the best interests of the Settlement Class. Renick Decl. ¶ 26.

> Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.

*DirecTV*, 221 F.R.D. at 528 (internal quotations, alterations, and citations omitted).

This Settlement is the product of arms-length, non-collusive negotiations attended by experienced class counsel.  Renick Decl. ¶ 26.  Prior to settlement, a complete investigation of Defendants' wage and hour practices with regard to rest and meal breaks and an extensive review of timecard and payroll data were conducted to evaluate liability and damages. Renick Decl. ¶ 26. The litigation had reached the stage where the Parties have a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement.  *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). Based on their evaluation and expertise, Class Counsel strongly believe that the settlement is a fair, reasonable, and adequate resolution of the claims of the Settlement Class and is preferable to continued litigation.[3]  Renick Decl. ¶ 26.

### 5. The Presence of Governmental Entities

There are no government entities participating in the Settlement.  Plaintiffs, however, provided a copy of the Settlement Agreement to the California Labor and Workforce Development Agency ("LWDA") in accordance with Labor Code § 2699(l)(2) on January 10, 2022  Renick Decl., Ex. 3, ¶ 27. As of the filing of this motion, the LWDA has not filed an objection or raised a concern regarding the

---

[3] Class Counsel "represents [the] interests of the class as a whole" and it is Class Counsel's responsibility to "determine whether seeking the court's approval of a settlement would be in the best interests of the class as a whole."  Fed. R. Civ. P. 23, cmts. 2003 amdts., ¶ (B)(1).

1   Settlement. *Id.*

2       In addition, Defendants provided notice of settlement pursuant to the Class Action Fairness Act

3   ("CAFA"), 28 U.S.C. § 1715, to the U.S. Attorney General and Attorneys General in specified state

4   offices on March 29, 2021. Renick Decl., Ex. 2, ¶ 27. No objection has been filed or concern raised by

5   any of the Attorneys General regarding the settlement. *Id.*

6       The absence of any objection or concern raised by a government entity provided notice weighs in

7   favor of the Settlement.

8           **6.      The Reaction of the Class Members**

9       The reaction of the Class Members has been very positive and favors approval of the Settlement.

10  Here, the Notice informed Settlement Class Members that Requests for Exclusion were to be sent to the

11  Claims Administrator, such that they are postmarked on or before December 20, 2021. Dkt. 70;  Ex. 1 to

12  Johnson Decl. at ¶¶ 6-7. The Notice also sets forth the information that must be included in each Request

13  for Exclusion. *Id.* At ¶¶ 7-8. In addition, the Notice informed Settlement Class Members that Objections

14  were to be filed or mailed to the Court, such that they are postmarked on or before December 20, 2021.

15  *Id.* At 8.

16      No Class Member has objected to nor opted out of the Settlement. Johnson Decl. at ¶¶ 11-12.  In

17  addition, no disputes regarding the number of workweeks awarded were submitted. *Id.* .

18          **C.      The Plan of Allocation Is Fair, Adequate, and Reasonable and Should be Approved.**

19      "Approval of a plan for the allocation of a class settlement fund is governed by the same legal

20  standards that are applicable to approval of the settlement: the distribution plan must be 'fair, reasonable,

21  and adequate.'" *In re Citric Acid Antitrust Litig.,* 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).  Here,

22  the plan of allocation provides that court-approved attorneys' fees and costs, court-approved service

23  awards, administrative costs, and payment to the LWDA under PAGA are deducted from the Settlement

24  Fund ($3,800,000) to determine the "Net Settlement Amount." Renick Decl., Ex. 1, ¶ 28. The Net

25  Settlement Amount is then allocated for each member of the Settlement Class.  Renick Decl. at ¶¶ 31-32.

26      *Attorneys' Fees*—With respect to awarding attorneys' fees, "courts have an independent

27  obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have

28  already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.

2011).  Plaintiffs filed their Motion for Attorneys' Fees and Reimbursement of Costs seeking fees in the amount of $950,000 (25% of the settlement) and $21,664.81 in costs, which was posted to the case website on November 15, 2021. Renick Decl., ¶ 34; Johnson Decl. ¶ 6.d. The motion reflects that the fees and costs requested by Plaintiffs are reasonable and justified based on the relevant factors weighed in determining such awards. *See* Dkt. 71. Moreover, the request is void of any evidence of collusion, such as counsel receiving a disproportionate distribution in comparison to the class, a negotiated "clear sailing agreement," or the reversion to Defendants of any unawarded fee amount. *See Bluetooth*, 654 F.3d at 947. Here, Plaintiffs seek fees at the Ninth Circuit's 25% of the fund benchmark, Defendants have only agreed not to oppose a reasonable fee request, and the entire settlement amount is non-reversionary. Ex. 1, ¶ 51. Plaintiffs' lodestar is $445,990, and Plaintiffs seek a multiplier of 2.1.  This falls well within the Ninth Circuit's presumptively acceptable range of 1.0 to 4.0.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002); *see also Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (applying 2.83 multiplier); *Craft v. City of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (court ordered attorneys' fee of 25% of the settlement fund, where lodestar cross-check showed a multiplier of 5.2).

 *Incentive Awards*—As addressed herein, *see infra* Section III.D., Plaintiffs seek an incentive award in the amount of $5,000 for each of the two Named Plaintiffs. "The Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *28 (N.D. Cal. Apr. 29, 2011) (*citing Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). Here, the amount sought is reasonable and fair based on the services provided and risks incurred by each during the course of the class action litigation.

 *Administrative Costs*—Plaintiffs also request final approval of administration costs to be paid to Claims Administrator CAC Services in the amount of $8,166.78. Johnson Decl. ¶ 17, and Ex. 3 thereto. "Courts regularly award administrative costs associated with providing notice to the class." *Bellinghausen*, 306 F.R.D. at 266. The amount requested is fair and reasonable given that the Claims Administrator promptly and properly distributed the Class Notice to Class Members and has performed its duties in accordance with the Settlement terms.  Johnson Decl. ¶¶ 4-15; Renick Decl. ¶ 29.

1    *PAGA penalties*—The Settlement provides that $40,000 will be allocated to penalties under the

2    Private Attorneys General Act ("PAGA"), with 75% of the PAGA penalties ($30,000) being paid to the

3    California Labor and Workforce Development Agency ("LWDA") and 25% of the PAGA penalties

4    ($10,000) being paid to Settlement Class Members, including those who opt out.  Renick Decl. ¶ 30.

5    This amount is reasonable and adequate given that the possible recovery on the PAGA claim varies

6    tremendously from thousands to a few million dollars, and that there is "a substantial risk of recovering

7    nothing" or very little. *See, e.g., Viceral v. Mistras Group, Inc.* No. 15-cv-02198-EMC, 2017 WL

8    661352 (N.D. Cal. Feb. 17, 2017), at *3. For instance, in *Viceral v. Mistras Group, Inc.*, the Court

9    granted final approval of a $6,000,000 settlement with a $20,000 allocation for the PAGA claim because

10   plaintiffs faced "a substantial risk of recovering nothing on either the PAGA or class claims." *Id.* The

11   court referred to its prior considerations at preliminary approval, which included that "courts have often

12   exercised discretion to reduce PAGA verdicts below the statutory penalty." *Id.* At *8. This Court should,

13   therefore, approve the $40,000 allocation for the PAGA claim as adequate and reasonable, especially

14   since the LWDA has filed no objection despite being served with notice of settlement on January 10,

15   2022. Renick Decl., Ex. 3, ¶ 27.

16   *Class Member Payments*—The formula in the Settlement Agreement provides to each Class

17   Member a cash payment which equates to a percentage of the Net Settlement Amount calculated based

18   upon the number of weeks worked by a participating Class Member during the Class Period while

19   assigned a 12-hour rotating shift at the Pittsburg, California manufacturing plant. The Administrator

20   calculated the total number of Workweeks worked by all Class Members during the Class Period. The

21   value of each Workweek equals the Net Settlement Amount divided by the total number of Workweeks

22   for all Class Members. *Id.* at ¶ 43.(a). Renick Decl. ¶ 31. "A plan of allocation that reimburses class

23   members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, No. C-

24   90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 18, 1994). The formula here is

25   reasonable as it relies on a "neutral and uniform metric by which to allocate the Settlement." *See In re*

26   *High-Tech*, 2015 U.S. Dist. LEXIS 118051, at *23-24 (finding plan of allocation appropriate where

27   formula was based on each Class Member's relative share of base salary, a "neutral and uniform

28   metric").

17

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMO OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 3:19-cv-07923-JCS

Following the issuance of an order granting final approval of the settlement and plan of allocation, the Claims Administrator will pay from the fund the court-ordered amounts and carry out the distribution of the Net Settlement Amount by mailing individual checks to the Settlement Class Members. Renick Decl., Ex. 1, ¶¶ 100-102. If any checks remain uncashed, the Claims Administrator will attempt to locate the Class Member, after which any uncashed checks should be sent to the California State Controller's Office Unclaimed Property Fund. Amendment to the Joint Stipulation at ¶ 11. Renick Decl., ¶ 32.  For all of the reasons set forth herein and the accompanying declarations, the plan of allocation is fair, reasonable, and should be approved.

### D.  The Requested Service Payment for the Two Named Plaintiffs Should Be Approved

In December 2019, Plaintiffs Jason Craig and Michael Ross both came forward to represent the interests of 12 hour shift employees their employer, Dow Agrosciences, LLC and the Dow Chemical Company.  Because of Plaintiffs' commitment to prosecute the class action complaint against their employer for its failure to authorize and permit operators to take meal and rest breaks at its Pittsburg operation, over 223 class members will significantly benefit from the $3,800,000 non-reversionary settlement, which will pay, an average individual payment of $12,511.96. Renick Decl. ¶ 33.

Each Plaintiff has provided relevant and unique information to Class Counsel regarding the day-to-day practices and operations at their workplaces as well as facilitated communications with co-workers/Class Members, all of which was essential for bringing and pursuing this litigation on a class-wide basis.  Renick Decl. ¶ 34.

Each Plaintiff spent considerable time pursuing the litigation, which included: gathering documents and providing them to Class Counsel; numerous meetings and calls with Class Counsel to discuss documents, the company practices and policies, and other facts relevant to the legal claims; reaching out to co-workers to gather information and documents; being available to Class Counsel to provide information and answer questions, including during the mediation. Craig Decl., ¶¶ 5-8; Ross Decl., ¶¶ 5-7.  Each Plaintiff took his responsibilities to the Class seriously, having spent numerous hours throughout the litigation maintaining contact with Class Counsel and keeping class members up to date regarding the status of the litigation. Craig Decl., ¶¶ 5-8,and Ross Decl., ¶¶ 5-7.

The retaliation and reputational risk Plaintiffs have undertaken by agreeing to be representatives

for the Class are real.  By associating their names with this litigation, each has put themselves at risk of retaliation with respect to their jobs while employed by Defendants and future job opportunities. Craig Decl., ¶¶ 5-8; Ross Decl., ¶¶ 5-7.  Plaintiffs took on the reputation of employees who will file a lawsuit against their employer, which has the real potential of jeopardizing future employment, particularly with a connected pool of likely employers in the same industry.  Craig Decl., ¶¶ 5-8,and Ross Decl., ¶¶ 5-7.  Plaintiffs have experienced and will continue to endure the stress of knowing that their initiation and prosecution of this lawsuit on behalf of the Class, which has cost their employer millions, may negatively impact future employment opportunities.  *Id.*

The Settlement Agreement authorizes a Service Payment of $5,000 each to the two Plaintiffs.  "[T]he Ninth Circuit has recognized that service awards to plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable."  *Harris,* 2011 U.S. Dist. LEXIS 48878, at *28 (citing *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003)); *see also Resnick v. Frank*, 779 F.3d 934, 943 (9th Cir. 2015) ("Incentive payments to class representatives do not, by themselves, create an impermissible conflict between class members and their representatives.").  Courts routinely approve such service payments to compensate plaintiffs for the work done on behalf of the class, the risks they incurred during the course of the class action litigation, and sometimes, to recognize their willingness to act as a private attorney general.  *Resnick,* 779 F.3d at 943.

The purpose of service payments is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59.

Subject to this Court's approval, Class Counsel requests the sum of $5,000 each to the two Plaintiffs for their commitment to prosecuting this litigation,  their efforts for more than two years, general releases of all claims arising from their employment, stigma upon future employment opportunities for having sued an employer, as well as having obtained substantial recoveries for every Class Member. *See* Craig Decl., ¶¶ 5-8; Ross Decl., ¶¶ 5-7.

The Service Payments requested are well within the range of those approved by this District Court.  *See Willner v. Manpower Inc.*  No. 11-cv-02846-JST, 2015 U.S. Dist. LEXIS 80697 *30 (N.D.

19

Cal. June 20, 2015) (approving $7,500 service payment as part of $8,750,000 of a wage and hour class action settlement); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. Mar. 19, 2015) (courts typically approve incentive awards up to $10,000); *see also Covillo v. Specialty's Café,* No. C-11-00594 DMR, 2014 U.S. Dist. LEXIS 29837, at *28–29 (N.D. Cal. Mar. 6, 2014) (ordering an $8,000 incentive award for each of the three named plaintiffs); *Chu v. Wells Fargo Invs., LLC,* Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 U.S. Dist. LEXIS 15821, at *15–16 (N.D. Cal. Feb. 16, 2011) (awarding a $10,000 incentive award to two named plaintiffs). In 2018, Judge Gonzalez Rogers approved incentive awards in the amount of $7,500 to each of the named plaintiffs in a similar rest break case filed by Plaintiffs' Counsel, Hadsell Stormer & Renick and Gilbert & Sackman, against Phillips 66 Company, in *Buzas v. Phillips 66 Company*, Case No. 4:17-cv-00163-YGR (March 6, 2018), ECF No. 47.

Service payments awarded in other district courts in California have been even greater, *e.g., Boyd v. Bank of Am. Corp.,* No. SACV 13–561 DOC, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) (approving $15,000 for named plaintiff as part of $5.8 million settlement of wage and hour misclassification class action); *La Fleur v. Med. Mgmt. Int'l, Inc.*, No. EDCV 13-00398-VAP, 2014 WL 2967475, at *8 (C.D. Cal. June 25, 2014) (approving enhancement award of $15,000 for each of two named plaintiffs as part of $535,000 wage and hour class action settlement); *Glass v. UBS Financial Services, Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) (Chesney, J.) (approving $25,000 incentive award to each of four named plaintiffs in FLSA overtime wage class action).

Courts have found that an incentive award in this range is warranted particularly when the class representatives have, as here, have demonstrated "a strong commitment to the class." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *17 & n.8 (N.D. Cal. Apr. 22, 2010) (citing *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 430 (2d Cir. 2007) (approving incentive awards of $25,000 to named plaintiffs who were deposed); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award); *In re Conn. Gen. Life Ins. Co.*, 1997 WL 910387, at *14 (C.D. Cal. Feb.13, 1997) (approving $25,000 incentive payments).

In assessing whether a service payment is reasonable, courts may balance "the number of named plaintiffs receiving service payments, the proportion of the payments relative to the settlement amount,

and the size of each payment." *Staton v. Boeing, Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Here, the aggregate Service Payment of $10,000 (two Plaintiffs at $5,000 each) constitutes approximately 0.26% percent of the gross settlement amount of $3,800,000.  Moreover, each Service Payment is less than half the average class member payment of $12,511.96, which is well within the range of reasonable.

Plaintiffs have invested much personal time and effort in the investigation - both before and after the action was commenced - and prosecution, and settlement of the case. The requested Service Payments are justified, fair and reasonable, particularly in light of the substantial Settlement Payments to be enjoyed by the Class averaging over $12,000.   Defendants do not oppose these payments and there is no opposition by any Class Member, which further supports their reasonableness.

### E.    Final Certification of the Class for Settlement Purposes Is Proper.

The Court should reaffirm its finding at preliminary approval that certification of the class for settlement is proper under Rule 23. *See* Dkt. 65 at 2. A district court must give "'undiluted, even heightened, attention in the settlement context' to scrutinize proposed settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, Nos. 15-56014, 15-56025, 15-56059, 15-56061, 15-56064, 15-56067, 2018 U.S. App. LEXIS 1626, at *36 (9th Cir. Jan. 23, 2018) (citation omitted). Here, the numerosity, commonality, typicality, and adequacy of representation prerequisites under Rule 23(a) are met, and common questions of law and fact predominate under Rule 23(b)(3).

### 1.    The Settlement Class Satisfies the Rule 23(a) Requirements

*Numerosity*—Based on the Claims Administrator's review of the data from Defendants, the Settlement Class includes 223 members. Johnson Decl. ¶ 16.  The proposed class is, therefore, so large that joinder is not practicable and disposition of their claims as a class will benefit the parties and the Court.  *See Slaven v. BP America, Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000) ("As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members. . . .").

*Commonality*—To show commonality, a plaintiff "must demonstrate that there are questions of fact and law that are common to the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(2)).  Here, Plaintiffs assert that there are common questions of fact and law arising from the putative class members' employment, including whether Defendants failed to authorize and permit class members to take meal and rest periods in accordance with applicable

21

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMO OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 3:19-cv-07923-JCS

California law because it failed to relieve class members of all work duties during their rest and meal periods.

*Typicality*—"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The claims alleged by the Named Plaintiffs arise out of the challenged practices and common course of conduct by Defendants and are based on the same legal theories as the claims of the putative class members; thus, they are typical of those claims which could be alleged by any member of the proposed class. Further, the relief sought by Named Plaintiffs is typical of the relief which would be sought by each member of the proposed class if they were to file separate actions.

*Adequacy of Representation*—To determine whether named plaintiffs will adequately represent a class, courts look to (a) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (b) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 462 (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Here, Named Plaintiffs are proper representatives of the proposed class because neither the Named Plaintiffs nor their counsel have any apparent conflicts of interest with the absent members of the Settlement Class and their claims arise out of the same set of facts as those of the Settlement Class. The Named Plaintiffs have been committed to the vigorous prosecution of this case and have reached a resolution they believe is in the best interests of the Settlement Class. Renick Decl. ¶ 35. Moreover, Plaintiffs' counsel, Hadsell Stormer Renick & Dai, and Gilbert & Sackman are highly experienced class counsel, having handled dozens of similar wage and hour class actions, as well as other types of class and complex litigation. Renick Decl., ¶¶ 36-40.

### 2.    The Settlement Class Meets the Requirements of Rule 23(b)

Pursuant to Rule 23(b)(3), class adjudication is proper if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Sandoval v. Roadlink United States Pac., Inc.*, No. EDCV 10-00973 VAP(DTBx), 2011 U.S. Dist. LEXIS 130378, at *2 (C.D. Cal. Oct. 9, 2011).

*Predominance of common issues*—"Common issues predominate over individual issues when the common issues represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Edwards v. The First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015).

Under California law, an employer is required to authorize and permit all employees to take duty free rest periods of 10 minutes per four hours of work or major fraction thereof. Wage Order 1-2001 §12(A); *see Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1032 (2012). In *Augustus*, the California Supreme Court held that "an employer cannot satisfy these obligations under Wage Order 4, subdivision 12(A) while requiring the employees to remain on call." *Id.* at 270. Plaintiffs' primary claim, that Defendants' lack of a rest break policy or practice which authorizes and permits duty-free rest breaks and its uniform failure to provide such breaks violate California law. This issue is suitable for class adjudication because it pertains to all members of the class. *See Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129, 1150 (2012) ("The lack of a meal/rest break policy and the uniform failure to authorize such breaks are matters of common proof."). Common issues, therefore, predominate over any individual issues.

*Superiority*—"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* at 1023. Here, Plaintiffs assert that the prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendants, and resulting in the impairment of putative class members' rights and the disposition of their interests through actions to which they are not parties. The prosecution of separate actions and individualized litigation would also increase the delay and expense to all parties and the court system. Finally, compared with other methods such as intervention or the consolidation of individual actions, a class action is fairer and more efficient.

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order granting

/ / /

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF/Case No. 3:19-cv-07923-JCS

1    Plaintiffs' Motion for Final Approval of Settlement and enter Judgment.

2    DATED:  January 14, 2022            Respectfully submitted,

3                                HADSELL STORMER RENICK & DAI LLP

4                                GILBERT & SACKMAN, A LAW CORPORATION

5

6                                */s/- Randy Renick*

7                                Randy Renick
                                  Attorneys for Plaintiffs and Conditionally Certified Class