RANDY RENICK (CA Bar No. 179652)
(Email: rrr@hadsellstormer.com)
CORNELIA DAI (CA Bar No. 207435)
(Email: cdai@hadsellstormer.com)
**HADSELL STORMER RENICK & DAI LLP**
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103-3645
Telephone: (626) 585-9600
Fax: (626) 577-7079

Attorneys for Plaintiffs
JASON CRAIG and Michael ROSS

[*Additional Counsel on next page*]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JASON CRAIG and MICHAEL ROSS, individually and on behalf of all similarly situated current and former employees,<br><br>Plaintiffs,<br><br>v.<br><br>CORTEVA, INC., E.I. DU PONT DE NEMOURS & COMPANY, DOW AGROSCIENCES LLC, THE DOW CHEMICAL CO., DOWDUPONT, INC. n/k/a DUPONT DE NEMOURS, INC., DOW INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:19-cv-07923-JCS<br><br>**CLASS ACTION**<br><br>**DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>DATE: January 28, 2022<br>TIME: 9:30 a.m.<br>Ctrm: F-15th Floor<br>Judge: Hon. Joseph C. Spero<br>        Chief Magistrate Judge<br><br>Complaint Filed: December 3, 2019 |

Jay Smith (CA Bar No. 166105)
(Email: js@gslaw.org)
JOSHUA F. YOUNG (CA Bar No. 232995)
(Email: jyoung@gslaw.org)
**GILBERT & SACKMAN, A LAW CORPORATION**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Fax: (323) 937-9139

Attorneys for Plaintiffs
JASON CRAIG and Michael ROSS

## **DECLARATION OF RANDY RENICK**

I, Randy Renick, hereby declare and say:

1. I am a partner at the law firm of Hadsell Stormer Renick & Dai LLP. I am an attorney licensed to practice law in California and counsel of record for Plaintiffs in this action. I have reviewed the documents identified herein and am fully familiar with the facts set forth therein. Based on my own personal knowledge and on my familiarity with the documents, pleadings and files in this action, I can state that the following information is true and accurate.

2. **The Settlement Class:** The Settlement Class definition is: All current and former hourly employees who worked a 12-hour rotating shift at the chemical manufacturing plant in Pittsburg, California from December 3, 2015 through August 4, 2021" (hereinafter "Settlement Agreement" or "SA"), ¶ II.5.

3. **The Settlement Terms:** The total non-reversionary settlement amount is $3,800,000 paid by Defendants for the benefit of the Class. The Settlement provides for: cash payment to members of the settlement class according to the number of weeks worked during the Class Period; service awards not to exceed $5,000 for the two named plaintiffs; $40,000 to penalties under the Private Attorneys General Act ("PAGA"), with 75% of the PAGA penalties ($30,000) being paid to the California Labor and Workforce Development Agency ("LWDA") and 25% of the PAGA penalties ($10,000) being paid to settlement class members who do not opt out; an estimated $10,000 to CAC Services for claims administration; and reasonable attorneys' fees and costs. *See* Exhibit 1, ¶¶ 20, 23-24, 38

4. **Factual Background** The Dow Chemical Company and Dow AgroSciences, LLC own and/or operate the Pittsburg plant, located in Contra Costa County, California, which manufactures products for agricultural operations and pest control services. The plant operates continuously, 24-hours per day, seven days per week. The plant processes hazardous and flammable chemicals that must be constantly monitored in order to ensure safety of those on-site and in the nearby communities. The chemicals must be maintained in a stable state to prevent toxic spills and fires, which requires, among other things, constant monitoring and adjusting of temperatures and pressures, prevention of reactive chemical issues, and monitoring and prevention of chemical leaks.

5. Certain employees, principally operators, who are scheduled to work 12-hour shifts ("12-hour shift employees"), are required to operate and/or monitor the production process at all times. 12-hour shift employees are required to monitor their units, respond to upsets and critical events, and maintain the safe and stable operation of the units. There are eight units, seven of which operate by sending and receiving materials to other units, processing materials, and shipping out product. The remaining unit provides security and emergency services. Approximately four to eight operators work a given day or night 12-hour shift depending on the size of the unit. An operator must be qualified and certified for his or her position in a unit.

6. Because the chemical production process requires non-stop monitoring, Plaintiffs and the other operators work continuous 12-hour shifts on a rotating shift schedule. Their duties include: monitoring the chemical production process, responding to upsets and critical events, maintaining safe and stable operation of their units, being attentive, being reachable during work hours, responding to audible alarms/pages on the intercom system/communications on handheld radios, and being in contact with their supervisors and other employees in their unit during work hours.

7. Plaintiffs contend that they and the other operators are not relieved of their duties during the entirety of their 12-hour shifts. They are constantly and continuously responsible for their units, which includes monitoring the work in their unit, responding to all work-related calls, pages, radio communications and alarms, receiving and taking on continuous work demands, assisting maintenance workers and contractors with projects, and being in communication with supervisors and other employees. As a result, Plaintiffs and the other operators do not receive off-duty 10-minute rest breaks or 30-minute off-duty meal breaks during their shifts.

8. Plaintiffs further contend that throughout the class period, Plaintiffs and the other operators have neither been scheduled for 10-minute rest breaks nor provided designated relief in order to take such breaks. Similarly, they have neither been scheduled for 30-minute meal breaks nor provided designated relief in order to take such breaks. Defendants do not have a policy, practice, or system for providing relief to Plaintiffs and the other class members to allow them to take off-duty rest or meal breaks.

9. **Procedural Background**: On December 3, 2019, Plaintiffs filed this action in the

1  Northern District of the United States District Court of California. Dkt. 1. The complaint asserted,
2  among other things, that Defendants require Plaintiffs and the putative class members, as operators at
3  its Pittsburg chemical manufacturing plant, to monitor the chemical production process, respond to
4  upsets and critical events, maintain the safe and stable operation of their units, and remain attentive and
5  reachable at all times during their shifts. Thus, Plaintiffs never receive duty-free 10-minute rest breaks
6  or 30-minute meal breaks because they are constantly and continuously responsible for their units and
7  were never relieved of these duties. Dkt. 1 at 4.

8        10.     The Complaint alleged the following claims: (1) Failure to Authorize and Permit Rest
9  Periods (Lab. Code § 226.7; Wage Order 1-2001); (2) Failure to Provide Meal Periods (Lab. Code §§
10 226.7, 512; Wage Order 1-2001); (3) Private Attorneys General Act ("PAGA")(Lab. Code § 2698 *et
11 seq.*); and (4) Violation of the Unfair Competition Law ("UCL")(Bus. & Profs. Code §17200 *et seq.*).
12 Plaintiffs sought unpaid wages, statutory and civil penalties, restitution, attorneys' fees and costs,
13 interest, and injunctive and declaratory relief for the time period from December 3, 2015 to the present.
14 See Dkt. 1.

15       11.     On March 2, 2020, the Court granted the parties' stipulation to dismiss without
16 prejudice defendants Corteva, Inc., E.I. Du Pont de Nemours & Company, DowDuPont, Inc. n/k/a
17 Dupont de Nemours, Inc., and Dow Inc, leaving The Dow Chemical Company and Dow Agrosciences,
18 LLC remaining as defendants. See Dkt. 32. That same day, Defendants the Dow Chemical Company
19 and Dow Agrosciences filed their Answer to the Complaint. Dkt. 33

20       12.     **Investigation and Discovery**. On February 28, 2020, the parties filed their Joint Rule
21 26(f) Report and Case Management Conference Statement, identifying, among other things, their
22 disagreement over whether discovery should be phased and the categories of discovery that should be
23 produced. Dkt. 31 at 6. On March 6, 2020, the Court ordered no bifurcation of discovery and the
24 production by Defendants on an anonymized basis, of payroll records, timecards, policies, and
25 procedures. Dkt. 40. On May 12, 2020, June 22, 2020, and July 13, 2020, Defendants produced payroll
26 records, timecards, policies, and procedures, pursuant to the Court's order.

27       13.     On July 17, 2020, and July 27, 2020, Plaintiffs served their opening round of discovery
28 upon Defendants, the Dow Chemical Company and Dow AgroSciences LLC, which included Special

Interrogatories and Requests for Production of Documents. Through this discovery, Plaintiffs sought contact information for the putative class members, job titles and employee numbers, and documents relevant to the Plaintiffs' claims for rest break and meal break violations, and defenses thereto, and the Named Plaintiffs' adequacy as class representatives.

14. **Mediation**. In May 2020, the parties agreed to attend a mediation with Steve Pearl, a well-respected mediator located in Los Angeles with expertise in wage and hour law, on August 17, 2020. Meanwhile, Defendants produced, and Plaintiffs reviewed, over a thousand pages of documents in PDF and Excel, including Defendants' payroll data and time records for the class members, shift schedules, policies and related training materials, related correspondence, and personnel files of the Named Plaintiffs.

15. With sufficient investigation, research, written discovery, class member interviews on relevant topics such as job assignments, work duties, and responsibilities, policies, and practices, particularly regarding meal and rest breaks, and document analysis to allow Plaintiffs to evaluate Defendants' liability and damage exposure for the Class Period, the parties moved forward with mediation with Steve Pearl on August 17, 2020. After a full day of negotiations, the parties were able to reach an agreement on the material terms and a Memorandum of Understanding was executed by the parties. The long form agreement was negotiated over the 7 months and ultimately executed by the parties on March 16, 2021. The Settlement negotiations took place after extensive investigation and discovery and were at arm's length, often with the assistance of a mediator.

16. <u>Settlement Agreement and Preliminary Approval</u>: The Court held a hearing on Plaintiffs' Motion for Preliminary Approval on April 23, 2021. At the hearing, the Court identified a number of issues which needed to be addressed before Preliminary Approval would be granted. The Parties subsequently negotiated an Amendment to the Joint Stipulation of Class Action Settlement and Release, a Revised Class Notice, a Revised Proposed Order Granting Preliminary Approval, and a Revised Order Granting Final Approval. Those items were submitted to the Court on May 21, 2021, Dkt. 64, 64-1, 64-2, and on August 4, 2021, the Court granted Preliminary Approval of the Settlement Agreement.

17. After the Notice was initially mailed on October 4, 2021, Plaintiffs discovered that the

1  Notice did not contain the revisions ordered by the Court in its August 4, 2021 Order granting
2  Preliminary Approval. Those revisions were: 1) breaking out the PAGA portion and class action
3  allocations for each class member; 2) advising Class members that they could not opt-out of the PAGA
4  portion of the Settlement; 3) describing the procedure for filing an objection and appearing at the Final
5  Approval hearing; 4) that the Motion for Attorney's Fees would be available on the administrator's
6  website 35 days prior to the opt-out and objection deadline; and 5) appearance at the Final Fairness
7  hearing would be online rather than in-person. On October 15, 2021, Plaintiffs filed a request to
8  extend class notice and final approval dates so that a corrected notice could be provided to Class
9  Members. Dkt. 65-1. On October 18, 2021, the extension was granted, and the objection and request
10 for exclusion deadlines was continued to December 20, 2021, and the hearing on Final Approval was
11 continued to January 28, 2022. Dkt. 70. As set forth in the Declaration of Nancy Johnson, the revised
12 Notice was then sent to each of the 223 Class Members.

13      18.    **The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely**
14 **Duration of Further Litigation.** Here, while Plaintiffs believe their case against Defendants is strong,
15 the Settlement eliminates significant risks they would face if the action were to proceed against
16 Defendants. Plaintiffs believe that the California Supreme Court's clarification of the off-duty nature
17 of rest breaks in *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016), provided clear
18 guidance regarding an employer's rest break obligations under California law and confirmed
19 Defendants' failure to provide Operators with lawful rest breaks. Yet, district courts have since
20 diverged in their interpretation and application of the decision. *See, e.g., Bell v. Home Depot U.S.A.,*
21 *Inc.*, No. 2:12-cv-02499 JAM-CKD, 2017 U.S. Dist. LEXIS 55442, at *5 (E.D. Cal. Apr. 10, 2017)
22 (concluding *Augustus* not applicable because the court did not consider an on-premises rest break
23 policy which does not require employees to remain on call); *Stewart v. San Luis Ambulance, Inc.*, 878
24 F.3d 883, 886–87 (9th Cir. 2017)(concluding Augustus did not control question of whether ambulance
25 employers are required to relieve ambulance attendants working 24-hour shifts of all duties during rest
26 periods and certifying question to California Supreme Court). In addition, the California legislature has
27 since been active in enacting exceptions. See Cal. Lab. Code § 226.75 (eff. Sept. 20, 2018)(employees
28 holding safety-sensitive positions at petroleum refineries exempt from rest break laws to the extent

they are required to carry radios, respond to emergencies, and remain on the employer's premises during their shifts); Cal. Labor Code § 887 (eff. Dec. 19, 2018)("[E]mergency ambulance employees shall remain reachable by a portable communications device throughout the entirety of each work shift.").

19. In addition, Plaintiffs believe that the facts here direct that an off-duty meal period should have been provided to operators since the employer could schedule the work in a manner that allowed operators to be relieved by other operators qualified and certified to cover their positions so they could take their meal breaks. While Defendants presented an on-duty meal break agreement to employees, Plaintiffs believe the agreement is not valid to qualify for the "exceedingly narrow" on-duty exception because the facts do not satisfy the requirement that "the nature of the work prevents an employee from being relieved of all duty." *See Augustus*, 2 Cal. 5th at 266–67. Nonetheless, Defendants would certainly argue that recent legislation and requests for exemptions granted by the California Labor Commissioner's Office for other companies in the same or similar industries involving safety-sensitive positions indicate that this requirement would be met.

20. With class claims for violations of rest and meal breaks and other wage and hour laws, litigation can extend for many years due to the many hurdles facing plaintiffs in class actions. Accordingly, many more years of litigation and an appeal was a very real possibility here. Continued litigation against Defendants would inevitably involve significant additional expenses and protracted legal battles, which are avoided through settlement. In my experience, it is not uncommon for class actions to be litigated for many years due to the inherent complexities of litigating on behalf of a class. Typically, class action wage and hours cases such as this matter, take 3-5 years to resolve.

21. Many, however, take significantly longer. For example, the matter entitled *USW v. ConocoPhillips Company*, CV 08-2068 PSG, United States District Court for the Central District of California was filed in 2008 and did not resolve until after five years of heavy litigation involving adjudication of class certification and summary adjudication issues and an appeal. Many cases take even longer to resolve. For example, in 2004, Plaintiffs filed suit on behalf of a class of hourly newspaper employees alleging claims of unpaid overtime and other wage and hour violations in *Wang v. Chinese Daily News*, Case No. CV-04-1498 CBM, United States District Court for the Central

6

DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT; AND EXHIBITS/ Case No. 3:19-cv-07923-JCS

District of California. I joined the case as lead trial counsel on behalf of the Plaintiff class in 2006. After a jury trial, a bench trial and multiple appeals, Plaintiffs obtained a favorable judgment for more than $5,200,000 in 2015—over a decade after the case was filed.   In 2007, I represented plaintiffs in a suit filed on behalf of a class of hourly workers against one of several hotels for violation of a city service charge ordinance in *Lozano v. Hilton Los Angeles Airport*, et al., BC 377063, Superior Court of California for the County of Los Angeles. It was heavily litigated with my firm successfully defending the underlying Ordinance on Appeal in the published decision of *Garcia v. Four Points Sheraton LAX*, 188 Cal. App. 4th 364 (2010).  It ultimately settled on the eve of trial in 2013—six years after the lawsuit was filed.

22.     **The Amount Offered in Settlement.**  Plaintiffs' primary claim is for the non-compliant rest breaks and meal breaks and compensation of one hour's premium pay for each such failed break. Defendants' policies failed to provide relief to operators for duty-free rest breaks and meal breaks as they were required to be attentive and monitoring their units at all times, including during their rest breaks and meal breaks.

23.     Plaintiffs alleged claims for a violation of Labor Code section 226.7, the UCL, and PAGA. The Settlement provides that $40,000 will be allocated to penalties under the PAGA, with 75% of the PAGA penalties ($30,000) being paid to the California Labor and Workforce Development Agency ("LWDA") and 25% of the PAGA penalties ($10,000) being paid to Settlement Class Members who do not opt out. Settlement, ¶ 38. This amount is reasonable and adequate given that the possible recovery on the PAGA claim is within the Court's discretion and varies tremendously from thousands to a few million dollars, and that there is "a substantial risk of recovering nothing" or very little. *See, e.g., Viceral v. Mistras Group, Inc*. No. 15-cv-02198-EMC, 2017 WL 661352, at *3 (N.D. Cal. Feb. 17, 2017).

24.     The settlement here provides for the payment of $3,800,000.  There are 223 class members.  The net settlement after the reduction of the LWDA payment for PAGA penalties, attorneys' fees, costs, incentive awards, and administration costs is $2,780,168.41. The average net payment to each class member will be $12,511.96.  Based on Plaintiffs' review of timecard and payroll data of all shifts during the class period, the total recovery amount at the time of the August 17, 2020,

1  mediation was approximately $8,200,000. The settlement amount of $3,800,000 is, therefore,
2  approximately 46% of the total amount that Plaintiffs could have recovered on the rest break, meal
3  break, PAGA and UCL claims.

4      The Settlement compares favorably with other cases recently resolved on behalf of 12 hour
5  shift operators at Northern California refineries. In *Buzas v. Phillips 66 Company*, U.S.D.C., Northern
6  District, Case No. 4:17-cv-00163 (final approval of $5,500,000 settlement granted March 8, 2018),
7  677 class members received an average distribution of $5,881.20. In *Berlanga v. Equilon Enterprises*
8  *LLC,* U.S.D.C., Northern District, Case No. 4:17-cv-00282 (final approval of $7,750,000 settlement
9  granted January 22, 2019), 497 class members received an average distribution of $11,419. In *Clack v.*
10 *Chevron Corporation*, Los Angeles Superior Court, Case No. BC649514 (final approval of
11 $17,375,000 granted on August 6, 2020), 2026 class members received an average distribution of
12 $6,334.74. In *Kendig v. ExxonMobil Oil Corp.*, U.S.D.C., Central District, Case No. 2:18-cv-9224
13 (final approval of $4,391,585 settlement granted on August 24, 2020), 338 Class Members received an
14 average distribution of $9,514.04.

15     25.    **The Extent of Discovery and Stage of the Proceedings**. My firm and our co-counsel
16 Gilbert & Sackman thoroughly investigated and researched the claims, potential defenses, and the
17 developing body of law relating to the interpretation of the Wage Orders and an employer's duty to
18 authorize and permit rest breaks and to provide meal breaks. Throughout the litigation, we thoroughly
19 engaged in the discovery process and made use of documents and data provided by Defendants
20 through formal and informal discovery to assess Defendants' potential liability and the likelihood the
21 Court could grant class certification. As a result, we had sufficient information to make an informed
22 appraisal of the case in reaching a Settlement, which we believe strongly benefits the Class.

23     26.    **Experience and Views of Counsel**. It is our recommendation and belief that the
24 proposed settlement is in the best interests of the Settlement Class. This Settlement is the product of
25 arms-length, non-collusive negotiations attended by experienced class counsel. Prior to settlement, a
26 complete investigation of Defendants' wage and hour practices with regard to rest and meal breaks and
27 an extensive review of timecard and payroll data were conducted to evaluate liability and damages.
28 Based on their evaluation and expertise, Class Counsel strongly believe that the settlement is a fair,

8

DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR FINAL APPROVAL
OF SETTLEMENT AGREEMENT; AND EXHIBITS/ Case No. 3:19-cv-07923-JCS

reasonable, and adequate resolution of the claims of the Settlement Class and is preferable to continued litigation.

27. The Presence of Governmental Entities. There are no government entities participating in the Settlement. Plaintiffs, however, provided a copy of the Settlement Agreement to the California Labor and Workforce Development Agency ("LWDA") in accordance with Labor Code § 2699(l)(2) on January 10, 2022. As of the filing of this motion, the LWDA has not filed an objection or raised a concern regarding the Settlement. *Id.* In addition, Defendants provided notice of settlement pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, to the U.S. Attorney General and the California Attorney General in specified state offices on March 29, 2021. No objection has been filed or concern raised by any of the Attorneys General regarding the settlement. March 29, 2021 submission and January 10, 2022 notice are attached hereto as Exhibit 2 and Exhibit 3.

28. **The Plan of Allocation Is Fair, Adequate, and Reasonable.** The plan of allocation provides that court-approved attorneys' fees and costs, court-approved service awards, administrative costs, and payment to the LWDA under PAGA are deducted from the Settlement Fund ($3,800,000) to determine the "Net Settlement Amount." The Net Settlement Amount is then allocated for each member of the Settlement Class.

29. **Administrative Costs**. Plaintiffs also request final approval of administration costs to be paid to Claims Administrator CAC Services in the amount of $8,166.78. The amount requested is fair and reasonable given that the Claims Administrator promptly and properly distributed the Class Notice to Class Members and has performed its duties in accordance with the Settlement terms.

30. **PAGA Penalties.** The Settlement provides that $40,000 will be allocated to penalties under the Private Attorneys General Act ("PAGA"), with 75% of the PAGA penalties ($30,000) being paid to the California Labor and Workforce Development Agency ("LWDA") and 25% of the PAGA penalties ($10,000) being paid to Settlement Class Members, including those who opt out.

31. **Class Member Payments**. The formula in the Settlement Agreement provides to each Class Member a cash payment which equates to a percentage of the Net Settlement Amount calculated based upon the number of weeks worked by a participating Class Member during the Class Period while assigned a 12-hour rotating shift at the Pittsburg, California manufacturing plant. The

Administrator calculated the total number of Workweeks worked by all Class Members during the Class Period. The value of each Workweek equals the Net Settlement Amount divided by the total number of Workweeks for all Class Members. SA at ¶ 43(a)-(b).

32. Following the issuance of an order granting final approval of the settlement and plan of allocation, the Claims Administrator will pay from the fund the court-ordered amounts and carry out the distribution of the Net Settlement Amount by mailing individual checks to the Settlement Class Members. If any checks remain uncashed, the Claims Administrator will attempt to locate the Class Member, after which any uncashed checks should be sent to the California State Controller's Office Unclaimed Property Fund. Amendment to the Joint Stipulation at ¶ 11. For all of the reasons set forth herein and the accompanying declarations, the plan of allocation is fair, reasonable, and should be approved.

33. **Service Awards.** Plaintiffs seek an additional service award in the amount of $5,000 for each of the two Named Plaintiffs. Here, the amount sought is reasonable and fair based on the services provided and risks incurred by each during the course of the class action litigation. In December 2019, Plaintiffs Jason Craig and Michael Ross both came forward to represent the interests of 12 hour shift employees their employer, Dow Agrosciences, LLC and the Dow Chemical Company. Because of Plaintiffs' commitment to prosecute the class action complaint against their employer for its failure to authorize and permit operators to take meal and rest breaks at its Pittsburg operation, over 223 class members will significantly benefit from the $3,800,000 non-reversionary settlement, which will pay, an average individual payment of $12,511.96.

34. Each Plaintiff has provided relevant and unique information to Class Counsel regarding the day-to-day practices and operations at their workplaces as well as facilitated communications with co-workers/Class Members, all of which was essential for bringing and pursuing this litigation on a class-wide basis. As described in their declaration, both of the Named Plaintiffs spent considerable time pursuing the litigation, which included: gathering documents and providing them to Class Counsel; numerous meetings and calls with Class Counsel to discuss documents, the company

///

///

practices and policies, and other facts relevant to the legal claims; reaching out to co-workers to gather information and documents; being available to Class Counsel to provide information and answer questions, including during the mediation.

35. **Adequacy of Representation**. Named Plaintiffs are proper representatives of the proposed class because neither the Named Plaintiffs nor their counsel have any apparent conflicts of interest with the absent members of the Settlement Class and their claims arise out of the same set of facts as those of the Settlement Class. The Named Plaintiffs have been committed to the vigorous prosecution of this case and have reached a resolution they believe is in the best interests of the Settlement Class.

36. My firm and Gilbert & Sackman are highly experienced class counsel, having handled dozens of similar wage and hour class actions, as well as other types of class and complex litigation. My firm Hadsell Stormer Renick & Dai LLP is highly experienced class counsel, having handled dozens of similar wage and hour class actions, as well as other types of class and complex litigation. My firm's qualifications are discussed in detail below. The qualifications of Gilbert & Sackman are set forth in the Declaration of Josh Young filed in support of the Motion for Preliminary Approval Dkt. 58-3.

37. My firm, Hadsell Stormer Renick & Dai LLP, has substantial litigation experience in wage and hour class actions. I am fully familiar with the legal and factual issues in this case, having handled dozens of wage and hour class actions as well as other types of class action and complex litigation. I specialize in complex cases and class action litigation, including wage and hour, antitrust, employment, civil rights and public interest litigation. I am a graduate of Southwestern School of Law and have been specializing in complex litigation since 1995, first with Hadsell & Stormer, Inc., and from January 1, 2000 until December 31, 2007, with the Law Offices of Randy Renick. Since January 1, 2008, I have been a partner with Hadsell Stormer Keeny Richardson & Renick, LLP, and its successors Hadsell Stormer Richardson & Renick, LLP and Hadsell Stormer Renick & Dai LLP. I was selected as a "Rising Star" by the Los Angeles Magazine and Law & Politics Magazine for 2004 and have also been selected as a "Super Lawyer" by Los Angeles Magazine and Law & Politics Magazine for the last fourteen (17) years. I have been one of only a few plaintiff-side employment lawyers

1  selected for inclusion on the "Best Lawyers in America" list each year since 2007.  My C.V. is
2  attached hereto as Exhibit 4.

3      38.    I am regularly asked to give lectures regarding public interest and class action litigation
4  to lawyers, law students and public interest organizations, including by the following organizations:
5  the University of California at Los Angeles School of Law; the State Bar of California Labor and
6  Employment Section; the Los Angeles County Bar Labor and Employment Section; the Coalition
7  Against Slavery and Trafficking; and the Western Trial Lawyers Association.

8      39.    Cornelia Dai is a partner at Hadsell Stormer Renick & Dai LLP, and was formerly an
9  associate with Hadsell & Stormer, Inc.  Over the last 15 years, in particular, she has litigated numerous
10 wage and hour class actions, including *Wang v. Chinese Daily News*, a class action in federal court
11 involving violations of overtime and meal and rest break laws that ultimately settled after more than 10
12 years of litigation.  Ms. Dai was also one of the plaintiffs' counsel in *South Central Farmers Feeding*
13 *Families v. City of Los Angeles*, a case brought on behalf of over 300 low-income families in a struggle
14 to preserve land for a much-needed urban community garden in South Los Angeles.  In addition, she
15 was one of the Doe plaintiffs' counsel in the state litigation of the international human rights case *Doe*
16 *v. Unocal.*

17     40.    Ms. Dai has been named to the Southern California Super Lawyers® list as a Rising
18 Star or Super Lawyer each year since 2005, and has been listed in The Best Lawyers in America every
19 year since 2012. In 2017 and 2019, she was named Lawyer of the Year in Southern California by Best
20 Lawyers for Litigation - Labor and Employment (Pasadena).  In 2018, she was named Lawyer of the
21 Year in Southern California by Best Lawyers for Employment Law – Individuals (Pasadena). In 2011,
22 she was selected as one of the Top 75 Labor & Employment Lawyers in California by the Daily
23 Journal.  Ms. Dai was also featured in the July 2007 issue of Southern California Super Lawyers® -
24 Rising Stars in an article entitled "For Abusive Employers, The Dai Has Been Cast."   Ms. Dai serves
25 on the Board of the California Employment Lawyers Association, the Executive Committee of the Los
26 Angeles County Bar Association's Labor and Employment Law section, and the Board of the Impact
27 Fund. Ms. Dai is frequently asked to speak on employment and wage and hour topics by legal
28 organizations and law schools.  Ms. Dai is a 1995 graduate of U.C. Berkeley, and she earned her Juris

Doctorate from U.S.C. Law School in 1999.

I declare under penalty of perjury pursuant to the laws of the United States and the State of California that the foregoing is true and correct and that this declaration was executed on January 14, 2022, at Pasadena, California.

*/s/ Randy Renick*
Randy Renick